COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss

SUPERIOR COURT
CIVIL ACTION NO. ___

SHEILA REIS, DENNIS REIS, ASHLEY REIS, MILDRED PACHECO, GARY SOUZA, DONNA SOUZA individually and on behalf of her minor children STEPHANIE PEZZONE and BRITNEY CORDEIRO for whom she id legally guardian, JAMIE BERGERON individually and on behalf of her minor children KRISTA CAMARA and ETHAN BARNETT, ALAN TRECIDA and KIM TRECIDA individually and on behalf of their minor children ELAINA TRECIDA, ALAN J. TRECIDA, JR., and LYNDSAY TRECIDA, and JOSEPH A. TRECIDA

Plaintiffs

v.

SOUTHERN UNION COMPANY dba FALL RIVER GAS AND NEW ENGLAND GAS

Defendant

## COMPLAINT

## INTRODUCTION

1. This action is a complaint to recover damages for personal injury, diminution in value of properties owned by the plaintiffs, lost of use and enjoyment of properties, emotional distress, and other damages caused by the Defendant's disposal and release directly or through agents of wastes from coal gasification and/or other industrial processes on properties owned by the plaintiff and/or which they presently or have lived.

## JURISDICTION

2. This court has jurisdiction pursuant to M.G.L. ch. 212, Sec. 4 and M.G.L. ch. 214, Sec. 1

## PARTIES

**Plaintiffs**

3. Sheila Reis has an address of and owns property located at 20 Judson Street, Tiverton Rhode Island

4. Dennis Reis has an address of and owns property located at 20 Judson Street, Tiverton Rhode Island

5. Ashley Reis has an address of 20 Judson Street, Tiverton, Rhode Island.

6. Mildred Pacheco has an address of 20 Judson Street, Tiverton, Rhode Island.

7. Gary Souza has an address of and owns property located at 40 Hooper Street, Tiverton, Rhode Island.

8. Donna Souza has an address of and owns property located at 40 Hooper Street, Tiverton, Rhode Island and is the legal guardian of plaintiffs Stephanie Pezzone and Britney Cordeiro.

9. Stephanie Pezzone is a minor and has an address of 40 Hooper Street, Tiverton, Rhode Island.

10. Britney Cordeiro is a minor and has an address of 40 Hooper Street, Tiverton, Rhode Island.

11. Jamie Bergeron has an address of 40 Hooper Street, Tiverton, Rhode Island and is the legal guardian of plaintiffs Krista Camara and Ethan Barnett.

12. Krista Camara is a minor and has an address of 40 Hooper Street, Tiverton, Rhode Island.

13. Ethan Barnett is a minor and has an address of 40 Hooper Street, Tiverton, Rhode Island.

14. Alan J. Trecida has an address of and owns property located at 37 Hooper Street, Tiverton, Rhode Island, and is the legal guardian with his wife Kim Trecida of : Elaina M. Trecida, Alan J. Trecida, Jr., and Lyndsay Trecida.

15. Kim Trecida has an address of 37 Hooper Street, Tiverton, Rhode Island, and is the legal guardian with her husband Alan Trecida: Elaina M. Trecida, Alan J. Trecida, Jr., and Lyndsay Trecida.

16. Elaina M. Trecida is a minor and has an address of 37 Hooper Street, Tiverton, Rhode Island.

17. Alan J. Trecida, Jr. is a minor and has an address of 37 Hooper Street, Tiverton, Rhode Island.

18. Lyndsay Trecida is a minor and has an address of 37 Hooper Street, Tiverton, Rhode Island.

19. Joseph A. Trecida has an address of 136 East Road Tiverton, Rhode Island, constructed the house at, and is co-signed of a mortgage for property located at 37 Hooper Street, Tiverton, Rhode Island.

**Defendant**

20. Defendant Southern Union Company is a Delaware Corporation with offices located at

One PEI Center, Wilkes Barre, Pennsylvania.

## FACTS

21. The Fall River Gas Company ("Fall River") was incorporated in Massachusetts in 1880.

22. As part of its operations it constructed coal gasification facilities in the city of Fall River, Massachusetts.

23. Coal gasification is a commercial process was used beginning in the late 19th century to provide natural gas for heating and lighting needs in urban areas.

24. In coal gasification, coal is heated in anaerobic conditions and as gas is released from the coal.

25. The gas was then purified to remove contaminants and the resulting natural gas was distributed through a piping system to customers throughout the Fall River service area.

26. Numerous wastes which are highly toxic are produced from the process including heavy oil sludges and cyanide wastes from the purification process.

27. These wastes include high levels of cyanide, lead, arsenic, volatile organic compounds, and toxic and highly carcinogenic organic compounds known as polyaromatic hydrocarbons ("PAHs").

28. A unique/fingerprint waste of the coal gasification process is iron cyanide waste is a solid material with a strong blue color.

29. PAHs from coal gasification wastes also have a distinctive odor.

30. By the 1950s, the production of natural gas by coal gasification had significantly declined as interstate pipelines provided natural gas to urbanized areas.

31. Coal gasification plants owned by Fall River were closed and demolished with structures and soils contaminated with such wastes were disposed of.

32. Fall River maintains its principal place of business in Massachusetts at 155 North Main Street, Fall River, Massachusetts, and does so today.

33. In 2000, Fall River merged into the Southern Union Company ("Southern Union").

34. Southern Union is not a holding company of Fall River, but rather the companies are fully merged with Fall River acting as a division and not a separate corporation from Southern Union.

35. On or about August 2002, during construction and installation of the Mount Hope Bay Sewer Interceptor Project in Tiverton, Rhode Island, the sewer contractor encountered soils which appeared to contain iron cyanide and other coal gasification wastes.

36. The State of Rhode Island Department of Environmental Management [hereinafter "RIDEM"] investigated stockpiled soils initiated and laboratory analysis showed the presence of cyanide and other substances indicative of coal gasification wastes at levels presumed to impact human health and the environment.

37. Later in 2002, further investigation of the subsurface was conducted under State Avenue, Bay, Foote, Hooper, Judson, Canonicus, Chase Streets also demonstrated such coal gasification wastes at levels presumed to impact human health and the environment.

38. In 2003, historical information provided by the Town of Tiverton to RIDEM documented that coal gasification wastes produced by Fall River had been disposed of in the area of Hooper, Judson and Bay Street where the plaintiffs reside or own property.

39. On March 17,2003, RIDEM issued a Letter of Responsibility to Southern Union under Rhode Island's Hazardous Waste Management Act requiring it to investigate this area for coal gasification wastes.

40. Testing performed in response to this letter has demonstrated that the properties owned by the plaintiffs or where the plaintiffs reside were filled and/or are contaminated with coal gasification wastes.

41. In 2003, the Town of Tiverton enacted an a moratorium which prohibits any excavation on the plaintiffs property and the issuance of any building permit that requires excavation.

42. Prior to the discovery of the wastes, Plaintiffs had engaged in a number of home improvement projects using their own labor such as the construction of garages and additions, planting of shrubbery, and other improvements.

43. During these activities, plaintiffs have been exposed to and have had physical contact with the soil.

44. Prior to the discovery of the wastes, Plaintiffs have maintained vegetable gardens on their properties and have eaten vegetables grown in the contaminated soil.

45. Plaintiffs have suffered immune system responses to exposure to wastes in the soils at their properties.

46. The exposure to the wastes on their properties increases the likelihood that they will develop cancer or other grievous disease.

47. The discovery of the waste has rendered plaintiffs' property essentially valueless making it impossible to sell, refinance, or in any way access the financial value of their home.

COUNT I

NEGLIGENCE

48. Plaintiffs repeats the allegations in paragraphs 1 through 48 set forth above and further

allege as follows.

49. The Defendant had a duty to exercise reasonable care in the management of wastes from its coal gasification processes to prevent personal injury or property damage.

50. This duty is also imposed pursuant was pursuant to Massachusetts and Rhode Island statutes.

51. The Defendant had a duty to ensure that any person to whom it transferred wastes managed that waste with reasonable care to prevent personal injury or property damage.

52. The Defendant had and has a continuing duty to advise and warn of the dangers associated with the disposal of the coal gasification waste which it has generated.

53. The Defendant knew or should have known that the coal gasification wastes would cause personal injury or property damage to the plaintiffs.

54. The Defendant breached its duties by among other things: (i) disposing of the coal gasification wastes in a manner which resulted in injury to plaintiffs and their property and/or transferring the wastes to others who managed it in a manner that resulted in injury to plaintiffs and their property; and (ii) failing to notify and/or take steps to provide record notice that the area had been used for the disposal of coal gasification wastes.

55. The Defendant is liable for the damages suffered by the Plaintiffs as a direct and proximate result of its negligence.

**COUNT II**

**RECKLESSNESS/GROSS NEGLIGENCE**

56. Plaintiffs repeats the allegations in paragraphs 1 through 55 set forth above and further allege as follows.

57. The Defendant had a manifest duty to exercise reasonable care in handling, disposing of, and/or releasing wastes from its coal gasification manufacturing operations.

58. This duty is also imposed pursuant was pursuant to Massachusetts and Rhode Island statutes.

59. The Defendant had a continuing manifest duty to ensure that any person to whom it transferred wastes managed that waste with reasonable care to prevent personal injury or property damage.

60. The Defendant had and has a continuing manifest duty to advise and warn of the dangers associated with the disposal of the coal gasification waste which it has generated.

61. The Defendant acted in reckless disregard as to the consequences of its actions on the plaintiffs and their property or should have known of the consequences.

62. The Defendant breached its manifest duty by among other things: (I) disposing of the coal gasification wastes in a manner which resulted in injury to plaintiffs and their property and/or transferring the wastes to others who managed it in a manner that resulted in injury to plaintiffs and

their property; and (ii) failing to notify and/or take steps to provide record notice that the area had been used for the disposal of coal gasification wastes.

63. The Defendant is liable for the damages suffered by the Plaintiffs as a direct and proximate result of its recklessness.

**COUNT III**

**ULTRAHAZARDOUS ACTIVITY/STRICT LIABILITY**

64. Plaintiffs repeats the allegations in paragraphs 1 through 63 set forth above and further allege as follows.

65. The Defendants engaged in an ultrahazardous activity when it engaged in the business of operating coal gasification facilities and, in particular, handling, disposing, releasing and otherwise managing wastes generated from those facilities.

66. The Defendant knew, or should have known of the high degree of risk associated with the operation of coal gasification facilities and, in particular, handling, disposing, releasing and otherwise managing waste generated from those facilities.

67. The Defendant is strictly liable for the damages suffered by the Plaintiffs as a direct and proximate result of its engaging in such ultrahazardous activities without regard to fault.

**COUNT IV**

**PRIVATE NUISANCE**

68. Plaintiffs repeats the allegations in paragraphs 1 through 67 set forth above and further allege as follows.

69. The Defendant, by its handling, disposal of, and release of coal gasification wastes emanating from its own property has unreasonably interfered with the Plaintiffs' use and enjoyment of their property creating a private nuisance.

70. The Defendant is liable for the damages suffered by the Plaintiffs as a direct and proximate result of such private nuisance.

**COUNT V**

**PUBLIC NUISANCE**

71. Plaintiffs repeats the allegations in paragraphs 1 through 70 set forth above and further allege as follows.

72. The Defendant, by its handling, disposal of, and release of coal gasification wastes has unreasonably interfered with the health and safety of the public creating a public nuisance.

73. The Plaintiffs as individuals living in the area of the disposal of such wastes are especially affected and have suffered injuries different and of greater magnitude than those

of the general public from such public nuisance.

74. The Defendant is liable for the damages suffered by the Plaintiffs as a direct and proximate result of such public nuisance.

## RELIEF REQUESTED

WHEREFORE, the Plaintiffs requests that this court issue judgment that:

A. the Defendant is liable for compensatory and punitive damages including costs and attorneys fees;

B. an order awarding Plaintiffs such other declaratory and/or injunctive relief as permitted by law or equity as necessary to assure that the Plaintiffs have a complete and effective remedy; and

C. Such other relief as the court deems equitable and just.

## JURY DEMAND

Plaintiffs hereby demand trial by jury.

Respectfully Submitted

Paul Revere, III
(BBO 636200)
Law Offices of Paul Revere, III
226 River View Lane
Centerville, Massachusetts 02632
508-778-7126

Dated: August 5, 2005

Fax 508-778-7126