UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| COLLEEN BIGELOW, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>NEW ENGLAND GAS COMPANY,<br><br>Defendant and Third Party Plaintiff,<br><br>v.<br><br>BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, ET AL.,<br><br>Third Party Defendants. | Case No. 05-370T<br>(Related cases: 05-221T; 05-274T; 05-522T) |

**MEMORANDUM IN SUPPORT OF MOTION TO STAY AND TRANSFER VENUE OF DOMINION RESOURCES, INC. AND DOMINION ENERGY BRAYTON POINT, LLC**

Third Party Defendants and Counterclaim Plaintiffs Dominion Resources, Inc. ("DRI") and Dominion Energy Brayton Point, LLC ("Brayton Point") (collectively "Dominion Entities"), by counsel, state the following in support of their Motion to Stay the Third Party Complaint filed by New England Gas Company in this Court, and to Transfer Venue regarding the Dominion Entities' Counterclaim against New England Gas Company to the United States District Court for the District of Maryland, Greenbelt Division:

## Introduction

As this Court is well aware, multiple landowners in Tiverton, Rhode Island ("Tiverton Plaintiffs") sued New England Gas Company ("NEG") claiming that their properties are contaminated by hazardous materials deposited decades ago by NEG's predecessor in interest,

the Fall River Gas Company. In September 2007, NEG filed a Third Party Complaint against the Dominion Entities seeking contribution and indemnification on the grounds that any environmental damage to the Tiverton Plaintiffs' properties was caused by historical air emissions from the Brayton Point Power Plant ("Power Plant"), located approximately three miles across Mount Hope Bay in Somerset, Massachusetts.

In response, the Dominion Entities filed an Answer and Counterclaim. In the Counterclaim, the Dominion Entities seek a declaration that NEG's claims are forever time-barred, enjoined, and discharged by the November 23, 2004 Order of the U.S. Bankruptcy Court for the District of Maryland (the "Sale Order"), Case No. 03-30465 (the "Bankruptcy Case"). Pursuant to the Sale Order, on December 31, 2004, Dominion Energy New England, Inc. purchased certain "Transferred Assets" from USGen New England, Inc. (the "debtor").[1] The Transferred Assets included the Power Plant. Dominion Energy New England, Inc. assigned the Power Plant to Dominion Energy Brayton Point, LLC effective January 1, 2005.[2]

The Sale Order expressly and unambiguously states that "the Transferred Assets shall be transferred to Buyer, and upon Closing shall be, *free and clear of all interests and claims* of any kind or nature whatsoever," except for limited assumed claims that did not include pre-closing environmental claims such as those asserted by NEG. *See* Sale Order at 13 (emphasis added). Instead, such claims were expressly defined as "Excluded Liabilities." In other words, the Sale Order bars any claims against the Dominion Entities regarding the debtor and the Power Plant that arose before December 31, 2004. Such claims remain the responsibility of USGen New England, Inc., the debtor/seller.

---

[1] A copy of the Sale Order is attached to the Dominion Entities' Counterclaim as Exhibit G.

[2] A copy of the Assignment and Assumption Agreement is attached to the Dominion Entities' Counterclaim as Exhibit J.

The Bankruptcy Case remains open, and the U.S. Bankruptcy Court for the District of Maryland, Greenbelt Division ("Bankruptcy Court") expressly "retained jurisdiction" to:

> a. *Interpret, implement and enforce the terms and provisions of this Sales Order*, the Bidding Procedures Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, *and resolve any disputes thereunder*, except as otherwise provided therein;
>
> b. *Protect Buyer* and the Assigned Contracts, Leases or Transferred Assets *against any interests or Excluded Liabilities, including without limitation, to enjoin the commencement or continuation of any action seeking to impose on the Buyer successor liability*. . . .

Sale Order at 13 (emphasis added).

NEG is a creditor in the Bankruptcy Case. NEG received actual notice of the proposed sale of the Power Plant but made no objections. Therefore, NEG should never have filed the Third Party Complaint against the Dominion Entities in the first place. At the very least, NEG should have filed a complaint for declaratory relief in the U.S. District Court for the District of Maryland to have that district court "interpret, implement and enforce" the Sale Order or, in the alternative, the Maryland district court could refer the dispute to the U.S. Bankruptcy Court for the District of Maryland[3] pursuant to 28 U.S.C. § 157. In either event, the District of Maryland is the proper forum for resolving any disputes regarding the interpretation and application of the Sale Order.

Therefore, this Court should stay the Third Party Complaint as to the Dominion Entities, and then transfer the Counterclaim to the U.S. District Court for the District of Maryland.

[3] Pursuant to 28 U.S.C. § 1334(b), the Bankruptcy Court has "original but not exclusive jurisdiction," over the claims of NEG. Since such claims arose prior to the Petition Date, they are claims against the Debtor and are a "core proceeding" under 28 U.S.C. § 157(b). *See* 28 U.S.C. § 157(b)(2)(B) ("Core proceedings include … (B) allowance or disallowance of claims against the estate."); 28 U.S.C. § 1334(b). The Bankruptcy Court therefore possesses concurrent jurisdiction over this action with this Court.

**Purchase of the Power Plant by Dominion Energy New England, Inc., as Assigned to Dominion Energy Brayton Point, LLC**

On July 8, 2003, USGen New England, Inc., a Delaware corporation (the "Debtor"), filed a voluntary petition for bankruptcy relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code"), in the Bankruptcy Court, thereby commencing Case No. 03-30465 (PM). On September 7, 2004, the Debtor filed a motion (the "Sale Motion") in the Bankruptcy Case seeking authority to sell certain of its assets to Dominion Energy New England, Inc. pursuant to a Fossil Asset Purchase and Sale Agreement between the parties, dated September 3, 2004 (the "APA"). *See* Counterclaim, Exhibits B & C (Sale Motion and APA).

On November 18, 2004, the Bankruptcy Court conducted a hearing on the Sale Motion and approved the sale of assets, which included the Power Plant, to Dominion Energy New England, Inc. under the APA pursuant to an order dated November 23, 2004, the Sale Order. *See* Counterclaim, Exhibit G (Sale Order). The sale closed on December 31, 2004, and on January 1, 2005, Dominion Energy New England, Inc. assigned the APA to Dominion Energy Brayton Point, LLC. *See* Counterclaim, Exhibit J (Assumption and Assignment Agreement). Dominion Energy Brayton Point, LLC is the current owner and operator of the Power Plant.

NEG was a creditor in the Bankruptcy Case and had actual notice of the sale. *See* Counterclaim, Exhibit F (Certificate of Mailing). At no time did NEG object to the sale or its terms. *See* Counterclaim ¶ 19.

Under the explicit language of the Sale Order, the Power Plant was sold "free and clear" of all claims against, and liabilities or obligations of the Debtor arising before the Closing Date. The Sale Order provided, in relevant part that:

> 6. Except for the Assumed Liabilities and the Permitted Liens, pursuant to 105(a) and 363(f) of the Bankruptcy Code, the Transferred Assets shall be transferred to Buyer, and upon Closing shall be, free and clear of all interests and claims of any kind or nature whatsoever, and all such interest of any kind whatsoever shall attach to the net cash proceeds of the

> Transactions in the order of their priority, if any with the same validity, force and effect that they now have as against the Transferred Assets, subject to any claims and defenses the Debtor may possess with respect thereto.
>
> * * * * * * * *
>
> 11. In addition, except as expressly set forth in the Purchase Agreement or as may be agreed to in writing by Seller and Buyer, the Buyer shall not assume or be obligated to pay, perform or otherwise discharge any debts, obligations and liabilities of the Debtor arising pursuant to the Debtor's ownership or operation of its facilities prior to the Closing Date.
>
> 12. Except for the Assumed Liabilities, the Buyer shall have no liability or responsibility for any liability or other obligation of the Debtor arising under or related to the Transferred Assets.
>
> 13. Except for the Assumed Liabilities and the Permitted Liens, the sale, transfer, assignment and delivery of the Transferred Assets shall not be subject to any interests and claims, and interest and claims of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtor and its estate.

Sale Order at 7 & 9.

The only exceptions to the "free and clear" sale of the Power Plant were for "Assumed Liabilities" and "Permitted Liens." Under the definition of Assumed Liabilities, all liabilities and claims, including Environmental Costs and Liabilities, arising prior to the Closing Date are neither "Assumed Liabilities" nor "Permitted Liens" but are instead "Excluded Liabilities" (as defined in section 3.2 of the APA) not transferred or assumed as part of the sale. NEG's claims do not fall under the definition of "Permitted Liens." *See* Counterclaim, Ex. C at 11 (Permitted Liens), Exs. H (Assumed Liabilities) & I (Excluded Liabilities).

The Sale Order further provides for the sale and transfer of assets free and clear of interests in accordance with section 363(f) of the Bankruptcy Code, stating:

> The Debtor may sell the Transferred Assets free and clear of all interests of any kind or nature whatsoever as contemplated by the Agreement because, in each case, one or more of the standards set forth in section 363(f)(1) through 363(f)(5) of the Bankruptcy Code have been satisfied.

Sale Order at 4. Under 11 U.S.C. § 363(f), a sale of property of a debtor "free and clear of any interest in such property of an entity other than the estate" is allowed when:

> (6) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (7) such entity consents;
> (8) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (9) such interest is in bona fide dispute; or
> (10) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Accordingly, the Sale Order makes clear that the assets sold to Dominion Energy New England, Inc. were sold free and clear of any claims and/or interests arising prior to the Closing Date, unless such claims and/or interests were expressly assumed as part of the sale.

As set forth above, the Bankruptcy Court expressly retained jurisdiction to "[i]nterpret, implement and enforce the terms and provisions of this Sales Order" and to "[p]rotect Buyer . . . or Transferred Assets against any interests or Excluded Liabilities, including without limitation, to enjoin the commencement or continuation of any action seeking to impose on the Buyer successor liability." Sale Order at 13.[4]

The Tiverton Plaintiffs allege that the contamination at issue was discovered in August 2002, and that on March 17, 2003, the Rhode Island Department of Environmental Management

---

[4] *See also* Second Amended Plan of Liquidation for USGen New England, Inc., Article 11.01, D and R, ("the Bankruptcy Court shall retain jurisdiction for the following purposes, without limitation: . . . Resolution of controversies and disputes regarding the enforcement or interpretation of . . . the Bankruptcy Court's orders that survive confirmation of the Plan pursuant to the Plan or other applicable law; . . . Resolution of controversies and disputes regarding each Sale Transaction or each Purchase Agreement"); Order Confirming The Modified Second Amended Plan of Liquidation For USGen New England, Inc. (Case No. 03-30465 (PM),¶ 2 ("this Court retains jurisdiction of the Chapter 11 case: (i) pursuant to and for the purposes of section 105(a) and 1127 of the Bankruptcy Code; and (ii) as set forth in Article XI of the Plan; which is incorporated by reference . . . .").

("RIDEM") issued a Letter of Responsibility to NEG. Complaint ¶¶ 4&18. *See also* Counterclaim ¶ 44. This Court has stated that the Tiverton Plaintiffs allege "that, approximately 50 years ago, hazardous substances that were the by-product of a coal gasification process utilized by Fall River Gas Company, NE Gas's predecessor, were deposited as fill on the plaintiffs' property." *Corvello v. Southern Union Company*, 469 F. Supp.2d 314, 318 (D.R.I. 2006).

Therefore, the claims asserted by the Tiverton Plaintiffs against NEG are based on decades-old contamination. To the extent NEG has any claim for indemnity and contribution against the Dominion Entities relating to air emissions from the Power Plant, such alleged contamination by the Power Plant certainly occurred before the Bankruptcy Case was filed in July 2003 and before the Power Plant was purchased by Dominion Energy New England, Inc. on December 31, 2004. Moreover, such pre-petition claims are not among the Assumed Liabilities and Permitted Liens identified in the APA. Finally, pursuant to the Sale Order, NEG's claims for indemnity and contribution relating to air emissions from the Power Plaint cannot be asserted against the Dominion Entities.

## Argument

### I. NEG'S COUNTERCLAIM SHOULD BE STAYED PENDING THE INTERPRETATION AND ENFORCEMENT OF THE SALE ORDER.

"[A] court, in its sound discretion, may stay any case pending before it as an exercise of its inherent power to control its own docket." *Canovo v. Enterprise Messaging Serv. Inc.*, 982 F. Supp. 54, 59 (D. Mass. 1997) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983)). "A district court has inherent power to stay proceedings 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

The determination of whether NEG's claims as alleged in the Third Party Complaint against the Dominion Entities are discharged and barred depends on the interpretation and enforcement of the Bankruptcy Court's Sale Order. "[I]t is well settled that the 'bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders including those providing for discharge and injunction.'" *In re U.S.H. Corp. of N.Y.*, 280 B.R. 330, 335 (Bankr. S.D.N.Y. 2002) (quoting *In re Texaco, Inc.*, 182 B.R. 937 (Bankr. S.D.N.Y. 1995)). Accordingly, this Court should stay the Third Party Complaint against the Dominion Entities and transfer the Counterclaim to allow the U.S. District Court for the District of Maryland (or, potentially, the Bankruptcy Court pursuant to 28 U.S.C. § 157) to determine whether the Sale Order bars and discharges the indemnity and contribution claims of NEG against the Dominion Entities.

## II. TRANSFER OF THE COUNTERCLAIM TO MARYLAND IS NECESSARY AND APPROPRIATE.

Pursuant to 28 U.S.C. Section 1404(a), a district court may transfer venue for the convenience of the parties and witnesses and in the interest of justice. Whether a change of venue is appropriate is a matter within the court's discretion. *U.S. ex. El. LaValley v. First Nat. Bank of Boston*, 625 F. Supp. 591, 594 (D.N.H. 1985). The plaintiff's choice of forum is a factor to be considered but carries less weight than under the doctrine of *forum non conveniens.* *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). In order to prevail on a motion to transfer under Section 1404(a), the moving party must show that "private and public interest factors clearly point towards trial in the alternative forum." *Paradis v. Dooley*, 774 F. Supp. 79, 82 (D.R.I. 1991) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). The relevant factors include: (1) ease of access to sources of proof; (2) availability of compulsory process to compel attendance of witnesses; (3) cost of attendance of willing witnesses; (4) ease of view of premises, if necessary; (5) enforceability of the judgment, if obtained; (6) advantages and

obstacles to a fair trial; (7) status of the court's trial calendar; and (8) familiarity of the forum with applicable state law. *Boothroyd Dewhurst, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, C.A. No. 92-0075 P, 1993 U.S. Dist. LEXIS 20855, at *18-19 (D.R.I. July 8, 1993); *see also McGlynn v. Credit Store, Inc.*, 234 B.R. 576, 582 (D.R.I. 1999); *Paradis v. Dooley*, 774 F. Supp. at 82 (quoting *Piper*).

First, the "ease of access to sources of proof" weighs heavily in support of the District of Maryland. All of the relevant documents, pleadings, notices and orders reside in the Bankruptcy Court of that District.

Second, Third and Fourth, the Dominion Entities do not anticipate that any witnesses and premises inspection will be necessary to interpret and enforce the terms of the Sale Order.

Fifth, the District of Maryland (and the Bankruptcy Court, in particular) retained jurisdiction to enforce the Sale Order. NEG is a creditor in the Bankruptcy Case and remains subject to the jurisdiction of the Bankruptcy Court. Thus, any judgment on the Counterclaim against NEG should be enforceable in the District of Maryland.

Sixth, the procedural morass currently enveloping the Tiverton Plaintiffs' claims and NEG's Third Party Claims poses significant obstacles to the prompt and efficient adjudication of the Dominion Entities' Counterclaim without expending unnecessary resources to participate in the Rhode Island proceedings. A transfer to the District of Maryland (accompanied by a stay of the Third Party Complaint regarding the Dominion Entities) would remove this obstacle.

Seventh, the declaratory and injunctive aspects of the Dominion Entities' Counterclaim could be addressed summarily by the District of Maryland (or the Bankruptcy Court) without further burdening this Court's trial calendar.

Eighth – and most importantly – the District of Maryland is quite familiar with the applicable law. The Bankruptcy Court of that district carefully considered all of the facts,

arguments and applicable bankruptcy law in preparing and entering the Sale Order. It carefully considered and weighed all of the issues involved in the Bankruptcy Case, including the assets and liabilities of the Debtor and the claims of the creditors. The Bankruptcy Court determined that the Power Plant should be sold "free and clear" of all pre-petition claims and encumbrances, but for the Assumed Claims and Permitted Liens. The Bankruptcy Court expressly recognized that claims might be improperly brought in the future against Dominion Energy New England, Inc. and its assigns based on the legal theory of "successor liability." Therefore, it expressly retained jurisdiction to "Protect Buyer" from such claims and to "enjoin" the commencement of such actions. *See* Sale Order at 13.

## III. NEG WILL NOT BE PREJUDICED BY A STAY AND TRANSFER REGARDING THE DOMINION ENTITIES

NEG will suffer little or no prejudice from a stay and transfer of the Third Party Complaint and Counterclaim with regard to the Dominion Entities. First and foremost, NEG participated in the Bankruptcy Case and had actual knowledge of the proposed sale and the Bankruptcy Court's Sale Order. Based on the unequivocal language of the Sale Order, NEG should never have filed its Third Party Complaint against the Dominion Entities in the first place. At the very least, NEG should have filed its own Complaint for Declaratory Relief in the District of Maryland to determine whether any of its alleged claims against the Dominion Entities may proceed despite the Sale Order.

Second, NEG denies all liability to the Tiverton Plaintiffs. Trial in the underlying case is not set. Therefore, NEG's third party claims against the Dominion Entities for contribution and indemnification are speculative and premature.

Third, the Tiverton Plaintiffs filed a Motion to Sever their claims from the Third Party Complaint. At the very least, NEG's claims against the Dominion Entities should be stayed (and the Counterclaim transferred) because the Sale Order presents a unique and separate issue for the

Dominion Entities which has nothing to do with any other aspect of the underlying cases, and which will unnecessarily delay this Court's adjudication of the Tiverton Plaintiffs' claims.

**Conclusion**

For all of these reasons, Third Party Defendants and Counterclaim Plaintiffs Dominion Resources, Inc. and Dominion Energy Brayton Point, LLC respectfully request that this Court grant a stay of the Third Party Complaint regarding the Dominion Entities and transfer the Counterclaim to the District of Maryland to "interpret, implement and enforce the terms and provisions" of its Sale Order and to "[p]rotect Buyer and . . . Transferred Assets" from "the commencement or continuation of any action seeking to impose on the Buyer successor liability." Sale Order at 13.

Third Party Defendants and Counterclaim Plaintiffs
DOMINION RESOURCES, INC. AND
DOMINION ENERGY BRAYTON POINT, LLC,
By Their Attorneys,

Craig R. Waksler, Esq.
R.I. Bar # 4945
Taylor, Duane, Barton & Gilman, LLP
10 Dorrance Street, Suite 700
Providence, RI 02903
(401) 273-7171
(401) 273-2904 (FAX)

Andrew G. Mauck, Esq.
Admission *pro hac vice* pending
Matthew B. Kirsner, Esq.
Admission *pro hac vice* pending
Troutman Sanders LLP
P. O. Box 1122
Richmond, VA 23218-1122
(804) 697-1200
(804) 698-6001 (FAX)

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and accurate copy of the foregoing document was served by U.S. Mail to:

[SEE ATTACHED COUNSEL LIST]

on October 31, 2007

Craig R. Waksler

| | | |
|---|---|---|
| John A. Tarantino, Esq.<br>David A. Wollin, Esq.<br>Adler Pollock & Sheehan, P.C.<br>One Citizens Plaza, 8th Floor<br>Providence, RI 02903-1345<br><br>Eric D. Herchmann, Esq.<br>David E. Ross, Esq.<br>Seth Davis, Esq.<br>Noelle M. Kowalczyk<br>Kasowitz, Benson, Torres & Friedman LLP<br>1633 Broadway<br>New York, NY 10019<br><br>Christina Dodds<br>Bishop, London, Brophy, & Dodds<br>3701 Bee Cave Road, Suite 200<br>Austin, Texas 78746<br><br>Gerald J. Petros<br>Robin L. Main<br>Hinckley Allen & Snyder<br>50 Kennedy Plaza<br>Providence, RI 02903<br><br>Robert J. McConnell, Esq.<br>Michael G. Rousseau, Esq.<br>Johnathan D. Orent, Esq.<br>Motley Rice LLC<br>321 South Main Street<br>Providence, RI 02940 | Mark W. Roberts<br>McRoberts, Roberts & Rainer, LLP<br>53 State Street<br>Boston, MA 02109<br><br>Russell X. Pollock, Esq.<br>Campbell, Campbell, Edwards & Conroy, PC<br>One Constitution Plaza<br>Boston, MA 02109<br><br>Neil T. Leifer<br>Thornton & Naumes, LLP<br>100 Summer Street, 30th Floor<br>Boston, MA 02110<br><br>Paul Revere, III, Esq.<br>Law Offices of Paul Revere, III<br>297 North Street, Suite 337<br>Hyannis, MA 02601<br><br>Brian Cunha, Esq.<br>Brian Cunha & Associates, P.C.<br>904 Broadway<br>East Providence, RI 02914<br><br>William Wick, Esq.<br>Wactor & Wick<br>180 Grand Avenue, Suite 950<br>Oakland, CA 94612 | Christopher P. McCormack<br>Pullman & Comley, LLC<br>850 Main Street<br>P.O. Box 7006<br>Bridgeport, CT 06601-7006<br><br>Jerry W. Ross, Esq.<br>Pillsbury Winthrop Shaw Pittman LLP<br>2 Houston Center<br>909 Fannin, Suite 2000<br>Houston, TX 770010-1018<br><br>Jeffrey Bromme, Esq.<br>Arnold & Porter LLP<br>555 Twelfth Street, N.W.<br>Washington, D.C. 20004<br><br>Jeanne M. Scott, Esq.<br>Ursillo, Teitz & Ritch, Ltd.<br>2 Williams Street<br>Providence, RI 02903<br><br>Thomas F. McGuire, Jr., Esq.<br>City of Fall River Corporation Counsel<br>1 Government Center, 6th Floor<br>Fall River, MA 02722 |