# D

**SO ORDERED**

**Date signed October 08, 2004**

PAUL MANNES
U. S. BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | ) | |
| USGen New England, Inc., | ) | Case No. 03-30465 (PM) |
| Debtor. | ) | Chapter 11 |

**AMENDED ORDER UNDER 11 U.S.C. §§ 105(a), 363 AND 365, AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014: (A) SCHEDULING HEARING ON APPROVAL OF ASSET SALE, ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS TO DOMINION ENERGY NEW ENGLAND, INC. AND UNEXPIRED LEASES, AND ASSUMPTION OF CERTAIN LIABILITIES, AND (B) APPROVING (i) FORM AND MANNER OF NOTICE OF SALE, (ii) BIDDING PROCEDURES, (iii) EXPENSE REIMBURSEMENT FEE AND BREAK-UP FEE AND (iv) GRANTING RELATED RELIEF**

This matter having come before the Court upon the motion dated September 7, 2004 (the "Motion") of USGen New England, Inc. ("Seller" or "Debtor"), for an order (the "Order"): (A) scheduling a hearing on Debtor's motion (the "Sale Motion") for an order (the "Sale Order"): (i) authorizing the sale of a portion of the Debtor's assets (the "Sale") under Sections 363, 365, and 1146(c) of the Bankruptcy Code, pursuant to and as described in the Asset Purchase and Sale Agreement dated as of September 3, 2004 (the "Purchase Agreement") by and among Debtor, USG Services Company, LLC, and First Massachusetts Land Company, LLC, as sellers, and Dominion Energy New England, Inc. and/or its designated acquisition subsidiary as buyer

(together, "Buyer"), and (ii) authorizing (a) Debtor's assumption, assignment and sale to Buyer of certain executory contracts and unexpired leases of Debtor (the "Assigned Contracts and Leases"), each free and clear of all Liens (except for Permitted Liens) and interests and (b) the assumption by Buyer of the Assumed Liabilities[1], and (B) approving the (i) form and manner of notice of Sale, (ii) proposed bidding and sale procedures (the "Bidding Procedures") in connection with the Sale Motion, and (iii) the Expense Reimbursement Fee and the Break-Up Fee (as those terms are defined herein) to be paid to Buyer as set forth in, and subject to the terms and conditions of, the Purchase Agreement; and it appearing that notice of the Motion was good and sufficient under the particular circumstances and that no other or further notice need be given; and the Court having considered the arguments of counsel at the hearing held on October 7, 2004 (the "Hearing"); and it appearing that the relief requested in the Motion is in the best interests of Debtor, its estate, its creditors and all parties in interest; and upon the Motion and the record of the Hearing; and after due deliberation thereon; and good cause appearing therefor; it is hereby FOUND AND DETERMINED THAT:

A. Debtor has articulated good and sufficient reasons for approving (i) the manner of notice of the Sale Motion, (ii) the form of notice of the Sale Motion (as annexed hereto as Exhibit A, the "Sale Notice") to be distributed to creditors and other parties in interest, (iii) the notice procedure for (x) the assumption by the Debtor and the assignment and sale of Debtor's Assigned Contracts and Leases to Buyer and (y) the assumption by Buyer of the Assumed Liabilities, pursuant to and as described in the Purchase Agreement, (iv) the Bidding Procedures in connection with the Sale, and (v) the Expense Reimbursement Fee and the Break-Up Fee.

B. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C. Reasonable notice of the Motion and a reasonable opportunity to object or be heard with respect to the motion and the relief requested therein have been afforded to all interested persons and entities, including, but not limited to: (i) the Office of the United States

[1] Capitalized terms not otherwise defined herein have the same meanings as set forth in the Motion or the Purchase Agreement, as the case may be.

Trustee for the District of Maryland (Greenbelt Division); (ii) counsel for Buyer; (iii) counsel for the Committee; (iv) any entities known to have expressed in writing an interest in a merger or acquisition transaction regarding the Debtor or any of its assets during the past six (6) months; (v) all entities known to have, or to have asserted, any lien, claim, encumbrance, right of first refusal, or other property interest in or upon any of the Transferred Assets which are to be sold pursuant to the Purchase Agreement; (vi) all taxing authorities for those jurisdictions in which the Transferred Assets are located; (vii) the Securities and Exchange Commission; (viii) the District Director of the Internal Revenue Service; (ix) the United States Attorney for the District of Maryland; (x) the Attorney General for the Commonwealth of Massachusetts; (xi) the Attorney General for the State of Rhode Island; (xii) the Massachusetts Department of Environmental Protection; (xiii) the Rhode Island Department of Environmental Management; (xiv) the United States Environmental Protection Agency; (xv) ISO New England, Inc.; (xvi) the Federal Energy Regulatory Commission; (xvii) New England Power Pool; (xviii) New England Power Company; (xix) all holders of Assumed and Excluded Liabilities; (xx) all parties to executory contracts or unexpired leases proposed to be assumed and assigned under the Purchase Agreement; (xxi) all entities that filed a notice of appearance and request for service of papers in this case in accordance with Bankruptcy Rule 2002; (xxii) all entities required to be served under Bankruptcy Rule 2002; and (xxiii) such other entities as may be reasonably requested by Buyer. Such notice and opportunity to object complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the applicable local rules and no further notice is necessary.

D. The Purchase Agreement with Buyer represents the highest and best offer that Seller has received as a result of its efforts to market the Transferred Assets when combined with the offers Seller has received for its remaining assets.

E. The Break-Up Fee of $18,000,000 and the Expense Reimbursement Fee of up to $7,000,000, as set forth in the Purchase Agreement (collectively, the "Payments"), are fair and reasonable, were negotiated by the parties in good faith and at arm's length, and are: (1) actual and necessary costs and expenses of preserving the Debtor's estate, within the meaning of 11 U.S.C. § 503(b) and 11 U.S.C. § 507(a)(1); (2) commensurate to the real and substantial benefit that Buyer has conferred upon the Debtor's estate; (3) reasonable and appropriate, in light of the size and nature of the proposed sale and comparable transactions, the commitments that have been made, and the efforts that Buyer has and will continue to expend; (4) necessary to induce Buyer to continue to pursue the sale and to continue to be bound by the Purchase Agreement; and (5) necessary costs of sale.

F. Moreover, the Payments are essential inducements and conditions relating to Buyer's entry into, and continuing obligations under, the Purchase Agreement. Unless it is assured that the Payments will be made in each of the circumstances described herein and in the Purchase Agreement, Buyer is unwilling to remain obligated to purchase the Transferred Assets or be otherwise bound under the Purchase Agreement (including the obligation to maintain its committed offer while such offer is subjected to higher or otherwise better offers as contemplated by the Bidding Procedures). The payments have induced Buyer to submit a bid that will serve as a minimum or floor bid on which the Debtor, its creditors, and other bidders can rely. Buyer has provided a material benefit to the Debtor and its creditors by increasing the likelihood that the best possible purchase price for the Transferred Assets will be received.

Accordingly, the Bidding Procedures and the Payments are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtor's estate.

G. The form and scope of the Sale Notice are reasonable and appropriate and comply with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the applicable local rules.

H. The entry of this Order is in the best interest of Debtor's estate and its creditors.

**NOW THEREFORE, THE COURT HEREBY ORDERS THAT:**

1. The Motion, as it pertains to the matters addressed herein, is GRANTED.

2. The Bidding Procedures set forth below are approved.

3. A hearing (the "Sale Hearing") to approve the sale of the Transferred Assets to Buyer or another Winning Bidder (as defined herein) shall be held on November 18, 2004, at 10:30 a.m. (EST) (the "Sale Hearing"), or as soon thereafter as counsel may be heard, before the Honorable Paul Mannes, United States Bankruptcy Judge, at the United States Bankruptcy Court, District of Maryland (Greenbelt Division) (the "Bankruptcy Court"), Courtroom 3D, 6500 Cherrywood Lane, Greenbelt, Maryland 20770.

4. All objections to the Motion or the relief requested therein, to the extent they pertain to the entry of this Order, that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled; provided, however that consideration of the Objection of New England Power Company filed on September 27, 2004 [Dkt. 1062] shall be deferred until the Sale Hearing (and responses to such objection to be filed by interested parties on or before November 12, 2004).

5. Seller is authorized to conduct an auction for sale of the Transferred Assets and the assignment and sale of the Assigned Contracts and Leases pursuant to the terms set forth in this Order.

6. The following Bidding Procedures shall apply with respect to the Sale:

(a) Qualification as Bidder. Seller, after detailed consultation with the Committee, will determine whether any entity (a "Potential Bidder") that wishes to make a Superior Offer is a "Qualified Bidder." For a Potential Bidder to be considered eligible as a Qualified Bidder, it must provide Seller within ten (10) days of entry of this Order (i.e., by October 18, 2004) with: (i) an executed confidentiality agreement substantially identical to the confidentiality agreement executed by Buyer (which shall automatically include all confidentiality agreements submitted to Debtor postpetition on or before August 6, 2004); (ii) current audited financial statements of the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of engaging in a Superior Offer (an "Acquisition Entity"), current audited financial statements of the equity holder(s) of the Potential Bidder or such other financial disclosure acceptable to Seller and the Committee, demonstrating such Potential Bidder's ability to close a proposed transaction; (iii) a written statement by the Potential Bidder stating that it agrees to be bound by the terms and conditions of this Order and the form of Purchase Agreement (but subject to Section 6(b)(ii) below); (iv) a written statement by the Potential Bidder that it will assume all or a portion of the Assumed Liabilities, to be assumed by Buyer; and (v) if the Potential Bidder is an Acquisition Entity, a written guarantee, letter of credit or other form of credit enhancement acceptable to Seller (after detailed consultation with the Committee) pursuant to which the equity holder(s) of the Potential Bidder are responsible for the Potential Bidder's obligations in connection with the Sale. The Potential Bidder also must establish that it has the ability to consummate its proposed transaction within the timeframe contemplated for consummation of the Purchase Agreement. Buyer is, and at all times shall be deemed to be, a Qualified Bidder entitled to participate in the Auction (as defined below).

(b) Bid Requirements.

i. Seller, after detailed consultation with the Committee, will determine whether a bid qualifies as a "Qualified Bid." To constitute a Qualified Bid: (a) the bid must be a written irrevocable offer from a Qualified Bidder containing written evidence of a commitment for financing or other evidence of an ability to consummate the Sale, subject to no conditions other than those set forth in the Purchase Agreement, in either event satisfactory to Seller after detailed consultation with the Committee; (b) the bid must

include evidence of authorization and approval from the Qualified Bidder's Board of Directors or comparable governing body indicating that the Qualified Bidder is duly authorized to perform the transactions in the bid and this Order; (c) the bid must be for all or a portion of the Transferred Assets; (d) the bid must not be materially more burdensome than the terms of the Purchase Agreement with respect to the Transferred Assets; (e) the bid must not request or entitle the bidder to any termination or break-up fee, expense reimbursement or similar type of payment (unless the Qualified Bidder is the Buyer); and (f) the bid must acknowledge and represent that the Qualified Bidder: (1) has had an opportunity to conduct any and all due diligence regarding Seller's businesses and assets prior to making its offer; (2) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Seller's assets in making its bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Transferred Assets or proposed transaction, or the completeness of any information provided in connection therewith or the Auction (as defined below), except as expressly stated in this Order or the Purchase Agreement. The Purchase Agreement is deemed a Qualified Bid.

ii. All bids must include clean and blacklined versions of a revised version of the Purchase Agreement (the "Bidder Purchase Agreement"), with (x) the clean version of the Bidder Purchase Agreement being a duly executed original substantially similar to and in the form of the Purchase Agreement, signed by the Qualified Bidder and (y) the blacklined version showing the proposed changes from the Purchase Agreement executed by Buyer.

iii. Deposit. Each Potential Bidder's bid must be accompanied by a deposit in an amount that is five percent (5%) of the total purchase consideration in the subject Bidder Purchase Agreement (the "Deposit"). Prior to the Bid Deadline (as defined below), the Deposit is to be delivered by the Qualified Bidder to the escrow agent under the Deposit Escrow Agreement in the form of a wire transfer to:

Wachovia Bank, National Association
ABA# 053000219
Account #5000 0000 16439

ATTN: Corporate Trust – Bond
Administration

iv. Additional Requirements for Bids. Bids must be: (a) in writing; (b) signed by an individual authorized to bind the Potential Bidder; and (c) received no later than 12:00 noon (EST) on November 8, 2004 (the "Bid Deadline"), by (i) general counsel for Debtor, USGen New England, Inc., 7600 Wisconsin Avenue, Bethesda, MD 20814, Attention: General Counsel; (ii) counsel for Debtor, Blank Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174, Attention: Marc E. Richards, Esquire; (iii) Blank Rome LLP, One Logan Square, Philadelphia, PA 19103, Attention: Ronald Fisher, Esquire; (iv) counsel for the Committee, Reed Smith LLP, 435 Sixth Avenue, Pittsburgh, PA 15219, Attention: Eric Schaffer, Esquire; (v) Reed Smith LLP, 2500 One Liberty Place, 1650 Market Street, Philadelphia, PA 19103, Attention: Claudia Z. Springer, Esquire; (vi) financial advisors to Debtor, Lazard LLC, 30 Rockefeller Plaza, New York, NY 10020, Attention: J. Blake O'Dowd, Managing Director; (vi) counsel for the Buyer, McGuireWoods LLP, One James Center, 901 East Cary Street, Richmond, Virginia 23219-4030; Attention: Dion W. Hayes, Esquire; and (vii) counsel for Buyer, Dominion Energy New England, Inc., 120 Tredegar Street, Richmond, Virginia 23219; Attention: Rudolph Bumgardner, IV, Managing Counsel.

v. No Conditions. Any bid must not be subject to financing, due diligence, acquisition of any Excluded Asset, the assignment of any executory contract other than the Assigned Contracts and Leases or any other condition or contingency less favorable to Seller than those set forth in the Purchase Agreement, as determined by Seller in its reasonable discretion after detailed consultation with the Committee.

vi. Initial Overbid. An initial overbid must meet the requirements of a Superior Offer (as defined in the Purchase Agreement, hereinafter, "Initial Overbid").

vii. Qualified Bid. Only a bid submitted by a Qualified Bidder that meets the requirements set forth in this section (b) shall be considered a "Qualified Bid."

viii. Bankruptcy Court Approval. All bids, including that of Buyer (whether through the Purchase Agreement or

otherwise), shall be subject to the approval of the Bankruptcy Court.

(c) Due Diligence.

i. <u>Diligence and Confidentiality Agreement.</u> Qualified Bidders will be provided with a Confidential Information Memorandum. Seller has established a "data room" containing "due diligence" information and documents related to Seller's businesses and assets as well as the Assigned Contracts and Leases and Assumed Liabilities. Seller will provide each Qualified Bidder compact discs containing the information and documents contained in the data room. Seller will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. Any additional due diligence will not continue after the Bid Deadline. Buyer may continue due diligence, including the submission of supplemental requests, up and until the Bid Deadline. Seller, its affiliates or any of its respective representatives are not obligated to furnish any information to any person except a Qualified Bidder. Any information and documents provided by the Debtor to any Qualified Bidder shall be promptly and, where possible, contemporaneously provided to all Qualified Bidders. Any Qualified Bidder who desires to conduct due diligence should contact Lazard LLC, 30 Rockefeller Center, New York, New York 10020, (212) 632-6000, Attention: J. Blake O'Dowd, financial advisors to Seller, for the due diligence procedures.

(d) Auction.

i. <u>Auction Date and Time.</u> If a Superior Offer is submitted for the Transferred Assets other than the Buyer's bid contained in the Purchase Agreement, then Seller shall conduct an auction (the "Auction"). The Auction will be held on November 15, 2004, commencing at 12:00 noon (EST) at the offices of Blank Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, New York, or such other time and place as may be established by Seller, after detailed consultation with the Committee (and is reasonably acceptable to Buyer), prior to the Sale Hearing Date, for consideration of Qualified Bids. Only the authorized representatives of each of the Qualified Bidders that timely submitted a Qualified Bid, the Committee, Buyer and Seller shall be permitted to attend the Auction.

ii. Auction Procedures. All Qualified Bidders participating in the Auction must be physically present at the Auction. At the Auction, the Seller, in its reasoned business judgment, may adopt rules for the Auction that will promote the goals of the Auction and that are not inconsistent with any other provisions of this Order or the Purchase Agreement. Any such additional rules shall provide that: (a) all procedures must be fair and open with no participating Qualified Bidder materially disadvantaged as compared to any other participating Qualified Bidder; (b) all bids shall be made on an open basis, and participating Qualified Bidders shall be entitled to be present for all bidding; and (c) the principals of each participating Qualified Bidder shall be fully disclosed to all other participating Qualified Bidders throughout the entire Auction. If no Potential Bidder makes the timely submissions required in para. 6(a) herein and is determined to be a Qualified Bidder, or if no Superior Offer (other than that of the Buyer) is received by the Bid Deadline, then no Auction shall take place, and the Debtor shall, at the Sale Hearing, request: (x) that the Purchase Agreement be deemed the highest and best offer for the Transferred Assets, (y) authority to proceed to close the Sale to Buyer pursuant to the Purchase Agreement, and (z) entry of the Sale Order.

iii. Evaluation of Highest or Best Offer. Seller shall, promptly after the Bid Deadline, after detailed consultation with the Committee: (a) evaluate all bids, if any, received, and (b) determine which bids, if any, constitute Qualified Bids. Seller shall provide Buyer and the Committee with copies of all Qualified Bids not more than two (2) business days after receipt. During the course of the Auction, Seller shall inform each participating Qualified Bidder which Qualified Bid or Bids reflect, in Seller's view, upon detailed consultation with the Committee, the highest or best offer. Seller may accept (in its discretion) two or more lot bids with respect to the Transferred Assets in lieu of a bulk bid if the aggregate amount of the accepted lot bids exceeds the highest bulk bid and the terms and conditions of the accepted lot bids, in the aggregate, are no less favorable to Seller than the terms and conditions of the highest bulk bid, as determined in Seller's discretion, upon detailed consultation with the Committee.

iv. Subsequent Bids. Seller shall not consider any subsequent bid made at the Auction unless the bid is made by a Qualified Bidder who has previously made a Qualified Bid

and such subsequent bid exceeds the previous highest or best bid by at least $5,000,000 (subject to the provisions of subsection (v) below).

v. Subsequent Buyer Bids. Buyer shall have the right to credit bid or include the amount of the Break-Up Fee and the maximum possible amount of the Expense Reimbursement Fee in the amount of any subsequent bid that it makes at the Auction. If, as a result of a subsequent bid made by Buyer at the Auction, the Buyer is the Winning Bidder or the Back-Up Bidder (as defined therein), the Buyer shall be entitled to credit the amount of the Break-Up Fee and the maximum possible amount of the Expense Reimbursement Fee against the Purchase Price payable at Closing.

vi. Other Terms. All Qualified Bids, the Auction, and the Bidding Procedures are subject to such other terms and conditions as are announced by Seller, after detailed consultation with the Committee, not inconsistent with this Order. At the conclusion of the Auction, the winning bid shall be the bid made pursuant to this Order that represents, in Seller's reasonable discretion, upon detailed consultation with the Committee, the highest or best offer (the "Winning Bid"). The Seller may not solicit, receive or consider bids for the Transferred Assets after the Auction. The bidder submitting such Qualified Bid shall become the "Winning Bidder," and shall have such rights and responsibilities of the purchaser as set forth in the applicable asset purchase agreement. No less than two (2) days prior to the Sale Hearing, the Winning Bidder (if other than the Buyer) shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Winning Bid was made. Seller will not be deemed to have finally accepted any bid until the bid has been approved by the Bankruptcy Court at the Sale Hearing.

vii. Irrevocability of Certain Bids. The bid of the Winning Bidder shall remain irrevocable in accordance with the terms of the purchase agreement executed by the Winning Bidder. The bid of the Qualified Bidder that submits the next highest or otherwise best bid (the "Back-Up Bidder") shall be irrevocable until the earlier of : (a) 180 days after entry of the Order approving the sale to the Winning Bidder; (b) closing of the sale to the Winning Bidder or the Back-Up Bidder; and (c) May 31, 2005.



118274.01600/21311775v3

viii. Supplemental Deposit Payment. If, upon conclusion of the Auction, the amount of the Deposit delivered by either the Winning Bidder or the Back-Up Bidder is less than an amount equal to five percent (5%) of the total purchase consideration agreed to be paid by either the Winning Bidder or the Back-Up Bidder, respectively, as a result of the Auction, then the Winning Bidder and/or the Back-Up Bidder, as applicable, shall, within three (3) business days after the conclusion of the Auction, wire an amount equal to such difference ("Supplemental Deposit Amount") in accordance with the wiring instructions set forth above.

ix. Retention of Deposit. The Deposit (including any Supplemental Deposit Amount) of the Winning Bidder shall be retained by Seller in accordance with the terms of the purchase agreement executed by the Winning Bidder. The Deposit (including any Supplemental Deposit Amount) of the Back-Up Bidder shall be held until the earlier of : (a) 180 days after entry of the Order approving the sale to the Winning Bidder; (b) closing of the sale to the Winning Bidder or the Back-Up Bidder; and (c) May 31, 2005. The Deposit plus interest of each Qualified Bidder other than the Winning Bidder and the Back-Up Bidder shall be paid to the Qualified Bidder within five (5) business days after the entry of the order of the Bankruptcy Court approving the sale to the Winning Bidder.

x. Failure to Close. In the event a bidder is the Winning Bidder (as determined by Seller, upon detailed consultation with the Committee and as approved by the Bankruptcy Court), and such Winning Bidder fails to consummate the sale as a result of the Winning Bidder's default or breach under the applicable purchase agreement in accordance with the terms of such purchase agreement by the closing date contemplated in such purchase agreement, Seller shall: (i) retain the Winning Bidder's Deposit (including any Supplemental Deposit Amount) as liquidated damages (except as otherwise specified in the Purchase Agreement); and (ii) upon detailed consultation with the Committee, be free to enter into a new purchase agreement with the Back-Up Bidder at the highest price bid by the Back-Up Bidder at the Auction (or, if the Back-Up Bidder is unable to consummate the Sale at that price, Seller, upon detailed consultation with the Committee, may consummate the Sale with the next highest Qualified Bidder at the Auction) without the need for an additional hearing (or additional Order) before the Bankruptcy Court.

xi. Non-Conforming Bids. Notwithstanding anything to the contrary in this Procedures Order, Seller, upon detailed consultation with the Committee, shall have the right to entertain bids from Qualified Bidders that do not conform to one or more of the requirements specified herein and deem such bids Qualified Bids; provided, however, that no non-conforming bid may be deemed to be a Qualified Bid unless (i) such bid is irrevocable in accordance with the terms of this Procedures Order; (ii) such bid is submitted with a Deposit in the amount specified in paragraphs 6(b)(iii) and 6(d)(viii) above; (iii) such bid is only for all or substantially all of the Transferred Assets; (iv) such bid is in an amount equal to or greater than the amount (including the Initial Overbid amount) required by paragraph 6(b)(vi) above; and (v) the identity of the bidder has been adequately described to participants at the Auction, prior to the commencement of the Auction.

(e) Expenses. Any bidders presenting bids shall bear their own expenses in connection with their bid and the proposed sale, whether or not such sale is ultimately approved, in accordance with the terms of the purchase agreement executed by such bidders. Buyer shall recover the Payments in accordance with the provisions of the Purchase Agreement and this Order.

(f) Conflict. Any conflict between the terms and conditions of this Order and any purchase agreement executed by Seller and any of the bidders (including Buyer's Purchase Agreement) shall be resolved in favor of this Order.

7. The Break-Up Fee and the Expense Reimbursement Fee are approved. Buyer's claim against the Debtor for the Payments and any other amounts owed by the Debtor to Buyer under or in connection with the Purchase Agreement shall constitute allowed administrative expense claims against the Debtor pursuant to 11 U.S.C. § 503(b) and 11 U.S.C. § 507(a)(1) without the need for any application, motion or further order of this Court.

(a) Right to Payments. Seller is hereby authorized to pay Buyer an amount equal to $18,000,000 (the "Break-Up Fee"), return the Deposit (and any interest accrued thereon) to Buyer, and, upon presentation of a statement (with a copy to be provided to Counsel for the Committee) setting forth with specificity the nature and

amount of Buyer's reasonable out-of-pocket expenses actually incurred by Buyer in connection with this Agreement, pay to Buyer an additional sum in an aggregate amount not to exceed $7,000,000 (the "Expense Reimbursement Fee"), each as and when required under the terms of the Purchase Agreement and the Escrow Agreement and without further Order of this Court.

(b) Method of Payments. Any payments of the Break-Up Fee or Expense Reimbursement Fee under Section 9.10(d) of the Purchase Agreement shall be made by the Seller by wire transfer of immediately available funds to an account designated in writing by the Buyer. The Seller acknowledges the Break-Up Fee and Expense Reimbursement Fee are necessary and appropriate expenses for the administration of the Seller's bankruptcy estate, pursuant to Sections 503 and 507 of the Bankruptcy Code, and that the Break-Up Fee and the Expense Reimbursement Fee are allowed administrative expenses against its estate. In addition, the Break-Up Fee and the Expense Reimbursement Fee, if not previously paid by the Seller, shall be payable directly from and secured by the cash component consideration of the Alternative Transaction.

8. Seller shall comply with the above procedures for consideration of competing bids to purchase all or a portion of the Transferred Assets.

9. The Escrow Agreement, Break-Up Fee, Expense Reimbursement Fee and the provisions of the Purchase Agreement relating to the payment thereof are hereby approved and are binding and enforceable with respect to the Debtor and Buyer, effective as of the date of entry of this Order, and the Debtor is hereby authorized to perform its obligations thereunder, without further Court approval.

**Notice**

10. The form of the Sale Notice is hereby approved. Within five (5) days of entry of this Order, Seller (or its agents) shall serve the Motion (including as an exhibit the Purchase Agreement), a copy of this Order and the Sale Notice by first class mail, postage prepaid, upon: (i) the Office of the United States Trustee; (ii) counsel for Buyer; (iii) counsel for

the Committee; (iv) any entities known to have expressed in writing an interest in a merger or acquisition transaction regarding Debtor or any of its assets during the past six (6) months; (v) all entities known to have, or to have asserted, any lien, claim, encumbrance, right of first refusal or other property interest in or upon any of the Transferred Assets which are to be sold pursuant to the Purchase Agreement; (vi) all taxing authorities for those jurisdictions in which the Transferred Assets are located; (vii) the Securities and Exchange Commission; (viii) the District Director of the Internal Revenue Service; (ix) the United States Attorney for the District of Maryland; (x) the United States Attorney for the District of Maryland; (xi) the Attorney General for the Commonwealth of Massachusetts; (xii) the Attorney General for the State of Rhode Island; (xiii) the Massachusetts Department of Environmental Protection; (xiv) the Rhode Island Department of Environmental Management; (xv) the United States Environmental Protection Agency; (xvi) ISO New England, Inc.; (xvii) the Federal Energy Regulatory Commission; (xviii) New England Power Pool; (xix) New England Power Company; (xx) all holders of Assumed and Excluded Liabilities; (xxi) all parties to executory contracts and unexpired leases proposed to be assumed and assigned under the Purchase Agreement; (xxii) all entities that filed a notice of appearance and request for service of papers in this case in accordance with Bankruptcy Rule 2002; (xxiii) all entities required to be served under Bankruptcy Rule 2002; and (xxiv) such other entities as may be reasonably requested by Buyer. In addition, Seller shall provide electronic notification of the Motion, Bidding Procedures Notice and this Order through posting on the Bankruptcy Court's website, www.mdb.uscourts.gov.

11. Within five (5) days of entry of this Order or as soon as practicable, Seller shall cause the Sale Notice to be published once in the National Edition of the Wall Street Journal, the Boston Globe, the Providence Journal, and such other publications as Buyer may

reasonably select.

12. Within seven (7) days of entry of this Order, Seller shall file with the Court and serve upon all non-debtor parties to Assigned Contracts and Leases, a notice (the "Assumption Notice") of Debtor's intention to assume, assign and sell that party's Assigned Contracts and Leases to Buyer. The Assumption Notice shall contain the cure amount (the "Cure") necessary (if any) to assume the Assigned Contracts and Leases (to include any and all amounts, whether prepetition or postpetition, outstanding under the affected Assigned Contract or Lease through and including October 1, 2004 (the "Cure Effective Date") and the identity of Buyer (with contact information for any further inquiries regarding adequate assurance under Section 365). The party to the Assigned Contracts and Leases to be assumed shall have until 4:00 p.m. EST on November 12, 2004, (i.e., 2 days before the Auction) to object to the Cure and raise any objections relating to adequate assurance issues (collectively, "Initial Objections"). The objection shall state with specificity what cure is required (with appropriate documentation in support thereof and any adequate assurance issues under Section 365). If no objection is timely received, the Cure set forth in Debtor's Assumption Notice shall be controlling notwithstanding anything to the contrary in any Assigned Contracts and Leases or other document. The Assumption Notice will also provide that Debtor, with Buyer's consent, may withdraw the request to assume, assign and sell any Assigned Contracts and Leases at any time on or before the hearing to approve the Sale/Confirmation Hearing. In addition, if Debtor is proceeding with the Sale of Transferred Assets to a party other than Buyer as a result of the receipt of a higher or better offer, then Debtor shall (a) give all affected parties to Assigned Contracts and Leases notice (the "Second Notice") by overnight delivery within three (3) days after the conclusion of the Auction, of the identity of the Winning Bidder; and (b) give any other

parties to executory contracts which will be designated as Assigned Contracts and Leases by the Winning Bidder notice of the (i) Cure with respect to such additional Assigned Contracts and Leases and (ii) identity of the Winning Bidder with contact information for any further inquiries regarding adequate assurance under Section 365. A party to Assigned Contracts and Leases who receives a Second Notice shall file any objections or supplements to any Initial Objection (the "Supplemental Objections") on or before 4:00 p.m. E.S.T. on November 24, 2004. In the event a Second Notice is required to be mailed as provided herein, then the Sale Hearing shall be continued until 10:30 a.m. on December 7, 2004. A hearing to consider the Initial Objections is hereby scheduled for the Sale Hearing. Seller, with Buyer's consent, shall have the right to withdraw the request to assume, assign and sell any one or more Assigned Contracts and Leases at any time on or before the Sale Hearing Date.

**Objections**

13. Objections, if any, to the Sale Motion or the relief requested therein including (i) the assumption, assignment and sale by Seller to Buyer of Assigned Contracts and Leases and (ii) the assumption by Buyer of the Assumed Liabilities shall (a) be in writing, (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, (c) be filed with the Clerk of the Court with a courtesy copy to the chambers of the Honorable Paul Mannes, United States Bankruptcy Judge for the District of Maryland, 6500 Cherrywood Lane, Third Floor, Greenbelt, MD 20770 and (d) be served upon (i) general counsel for Debtor, USGen New England, Inc., 7600 Wisconsin Avenue, Bethesda, MD 20814, Attention: General Counsel; (ii) counsel for Debtor, Blank Rome LLP, The Chrysler Building, 405 Lexington Avenue, New York, NY 10174, Attention: Marc E. Richards, Esquire; (iii) Blank Rome LLP, One Logan Square, Philadelphia, PA 19103, Attention: Ronald Fisher, Esquire; (iv) counsel for Buyer, McGuireWoods LLP, One James Center, 901 East Cary Street, Richmond, Virginia 23219-4030;

Attention: Dion W. Hayes, Esquire; (v) counsel for Buyer, Dominion Energy New England, Inc., 120 Tredegar Street, Richmond, Virginia 23219; Attention: Rudolph Bumgardner, IV, Managing Counsel.; (vi) counsel for the Committee, Reed Smith LLP, 435 Sixth Avenue, Pittsburgh, PA 15219, Attention: Eric Schaffer, Esquire; (vii) counsel for the Committee, Reed Smith LLP, 2500 One Liberty Place, 1650 Market Street, Philadelphia, PA 19103, Attention: Claudia Z. Springer, Esquire; and (viii) the Office of the United States Trustee, Office of the US Trustee, 6305 Ivy Lane, Suite 600, Greenbelt, MD 20770, Attention: Julia A. Mack, Esquire, so that they are received no later than 4:00 p.m. (EST) on November 12, 2004.

14. The failure of any objecting person or entity receiving notice of the Sale Motion to file its objections timely will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to Seller's consummation and performance of the Purchase Agreement (including, without limitation, the assumption, assignment and sale by Seller to Buyer of the Assigned Contracts and Leases and the assumption by Buyer of the Assumed Liabilities), if authorized by this Court.

**Miscellaneous**

15. Subject to the provisions of Article XIII of the Purchase Agreement, the Sale Hearing may be adjourned, from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date. All items not otherwise defined herein shall have the same meanings as set forth in the Purchase Agreement or the Sale Motion.

16. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

17. All time periods contained herein shall be calculated in accordance with Federal Rule of Bankruptcy Procedure 9006.

18. This Order is not stayed pursuant to Federal Rule of Bankruptcy Procedure 6004, 6006, or 7062 or otherwise and is immediately enforceable.

**END OF ORDER**

cc:

John Lucian, Esq.
Blank Rome LLP
250 W. Pratt Street, Suite 2201
Baltimore, MD 21201

Frank DiCello, Esq.
Reed Smith LLP
1301 K. Street, NW
Suite 1100 - East Tower
Washington, DC 20005

Julie Mack, Esq.
Office of the U.S. Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD 20770