UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GAIL CORVELLO, et al.,<br>KEVIN BURNS, et al.,<br>COLLEEN BIGELOW, et al., and<br>SHEILA REIS, et al.<br><br>Plaintiffs<br>v.<br><br>NEW ENGLAND GAS COMPANY<br><br>Defendant and Third Party Plaintiff,<br>v.<br><br>BRIDGESTONE FIRESTONE NORTH<br>AMERICAN TIRE, LLC, et al.<br><br>Third Party Defendants. | Case Numbers: 05-221T (Lead Case)<br>(Related and Consolidated cases:<br>05-274T; 05-370T, 05-522T) |

**NEW ENGLAND GAS COMPANY'S EMERGENCY MOTION TO COMPEL PLAINTIFFS TO PRODUCE SCIENTIFIC DATA, TEST RESULTS AND RELATED DOCUMENTS AND REQUEST FOR EXPEDITED HEARING**

New England Gas Company ("NEGasCo"), an unincorporated division of Southern Union Company ("Southern Union"), respectfully submits this Emergency Motion to Compel Plaintiffs to Produce Scientific Data, Test Results and Related Documents and Request for Expedited Hearing. By their own admission, plaintiffs now have data that plaintiffs contend are highly relevant to their claims of contamination, the central issue in the case. NEGasCo is entitled to these discoverable facts immediately in order to have sufficient time to review and evaluate the data. The plaintiffs have refused to produce any test results and raw data, as well as any other documents such as soil boring logs, photographs and video, thus forcing NEGasCo to bring this motion to compel. The motion should be granted.

## BACKGROUND

By this motion, NEGasCo seeks immediate production of two separate sets of test results and raw data and any other associated documents that contain factual information, such as soil boring logs, field notes, photographs and video. First, at the hearing before this Court on January 15, 2008, plaintiffs' counsel stated in response to questions by the Court that "investigation" had been conducted on approximately two-thirds to three-fourths of the plaintiffs' properties. Specifically, plaintiffs' counsel stated:

> MR. ROBERTS: The Plaintiffs' experts and agents have done sufficient investigation of the properties within the moratorium area to be able to establish, from our perspective, that there is coal gasification waste and where it's distributed through the tested properties....
>
> MR. ROBERTS: And, Your Honor, I can't give you the exact numbers, but in virtually every Plaintiff's property that's been investigated, there is evidence of coal gasification waste, either through the presence of materials such as clinkers, coal dust and actual testing data to – that shows cyanide, blue soil, the presence of PAHs, the present of coal tar.

*See* Transcript of January 15 hearing, p. 6, lines 2-6 and p. 7, lines 19-25, attached in Exhibit 1.[1]

Plaintiffs have yet to produce any documents related to these highly relevant and discoverable activities and findings. Second, plaintiffs have now conducted soil sampling at the NEGasCo's Charles Street facility in Fall River, Massachusetts, the subject of earlier motion practice between the parties before this Court. NEGasCo is entitled to the raw data and test results from these samples as well.

[1] Similarly, counsel for the Reis plaintiffs claimed that coal gasification waste had been found on all of the Reis plaintiffs' properties. *See* Exhibit 1 at p. 15, lines 1-10.

The documents requested are plainly responsive to NEGasCo's outstanding document requests pursuant to Federal Rule of Civil Procedure 34 served on plaintiffs on November 5, 2007. Specifically, the relevant documents requests are as follows:

> 3. All documents that refer or relate to the alleged contamination (a) of your property or the property where you reside in the Bay Street Area, and/or (b) any other property in the Bay Street Area, including, but not limited to, correspondence, reports, summaries, newspaper articles, town meeting minutes, and audio or video recordings including of news stories and/or town meetings;
>
> 5. All documents that comprise, refer or relate to any test, report, analysis or summary of soil samples takes from (a) your property, and (b) any other property in the Bay Street Area; and
>
> 10. All documents that refer or relate to Fall River Gas Company, including without limitation, in connection with the alleged contamination in the Bay Street Area.[2]

Any test results, raw data, soil boring logs, field notes, photographs, video, and any other related documents for both plaintiffs' properties and, to the extent applicable, for the Charles Street facility in Fall River, Massachusetts fall well within the scope of these requests – requests that required responses more than six weeks ago. *See* Exhibit 2 for pertinent pages. Indeed, plaintiffs have never suggested that the tests results, for example, were not responsive.[3] Nevertheless, when asked about production of these and related documents, plaintiffs' counsel responded that the documents would be produced with plaintiffs' expert report. *See* Exhibit 2, attaching E-mail exchange between plaintiffs' and NEGasCo's counsel. This response does not satisfy plaintiffs' on-going obligations under Rule 34. Moreover, this Court should not allow plaintiffs to withhold admittedly responsive documents until expert reports are due to unfairly

---

[2] *See* Document Request Nos. 6, 42 & 74, dated November 5, 2007, for additional requests calling for the production of the test results and scientific data. Attached hereto in Exhibit 2.

[3] Attached hereto as Exhibit 3 is the e-mail string between NEGasCo's counsel and plaintiffs' counsel setting forth the meet and confer regarding the soil sampling of plaintiffs' properties. *See* Exhibit 3, E-mail from Robin Main to Mark Roberts, dated January 18, 2008.

minimize the amount of time available to NEGasCo to review and analyze the same. The Court should therefore grant NEGasCo's motion to compel.

## ARGUMENT

NEGasCo is entitled to plaintiffs' factual test results, raw data, and associated documents as listed above in order to defend itself in the underlying litigation. Plaintiffs should not be allowed to hold NEGasCo's defense hostage while they withhold information regarding (i) a pivotal issue in the plaintiffs' case -- alleged contamination of plaintiffs' properties and (ii) soil sampling test results taken from NEGasCo's Charles Street facility. The information is factual in nature. NEGasCo does not seek analysis or opinion, but merely the raw data, test reports, soil boring logs, photographs and similar, associated materials apparently already available to plaintiffs. By being permitted to wait to produce the documents until plaintiffs provide their expert report, plaintiffs will gain an unfair advantage in discovery, a result the Federal Rules do not allow and this Court should not countenance.

### A. The Test Results and Associated Documents Related to Plaintiffs' Properties and the Charles Street Facility Are Discoverable Facts.

The documents requested pertaining to both plaintiffs' properties and the Charles Street facility are discoverable. As the Supreme Court has recognized, factual data is not protected from discovery. *See Upjohn v. United States*, 499 U.S. 383, 395-96 (1981). Simply because technicians or scientists are required to procure the data, the information is not thereby transformed into protected, privileged information. *See, e.g., Loctite v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981) (rejecting attempts to shelter highly technical test results by privilege); *see also Arkansas Game and Fish Comm'n v. United States*, 74 Fed. Cl. 426, 430 (2006) (involving experts in testing "does not transform" a fact-related request to work-product). Indeed, "[t]here are few, if any, conceivable circumstances where a scientist or engineer

employed to gather data should be considered an agent within the scope of the privilege since the information collected will generally be factual." *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 162 (E.D.N.Y. 1994).

The documents NEGasCo seeks here are factual in nature and thus fully discoverable, as courts have routinely held. *See, e.g., Arkansas Game and Fish Comm'n*, 74 Fed. Cl. at 430 (holding unevaluated data from water level testing part of fact discovery and discoverable); *Southern Scrap Material Co. v. Fleming*, 2003 WL 21474516, at *17 (E.D. La. June 18, 2003) (finding unannotated raw data, test results and graphic displays of test results from water, soil and dust samples to be factual matters and "fully discoverable"); *In re E.I. Du Pont De Nemours & Co. Benlate Litig.*, 918 F. Supp. 1524, 1548 (M.D. Ga. 1995), *rev'd on other grounds*, 99 F.3d 363, 373 (11th Cir. 1996) (recognizing that test results and data for fungicide contamination were "facts . . . not protected by any privilege"); *cf. Horan v. Sun Co., Inc.*, 152 F.R.D. 437, 439 (D.R.I. 1993) (holding that environmental test results contain "relevant, non-privileged facts" and are discoverable upon a showing of "adequate reasons" under Rule 26).

Moreover, NEGasCo asks only that plaintiffs now provide the fact-based, raw data and test results and associated documents, not any expert work-product opinion or legal analysis of the data. *See Southern Scrap*, 2003 WL 21474516, at *17. Accordingly, the work product doctrine is not implicated by the sampling of either the Charles Street facility or by the plaintiffs' properties; nor is any expert report or opinion. *See* Fed. R. Civ. P. 26; *see also Arkansas Game and Fish Comm'n*, 74 Fed. Cl. at 431 (noting that "testing and sampling manifestly constitutes fact discovery"). For example, in *Arkansas Game*, the government sought to install a series of piezometers on the Commission's property to measure water levels under Rule 34, arguing that its efforts constituted "expert discovery" and thus were not barred by the prior expiration of the

time for fact discovery. *See id.* at 429-30. The Commission resisted discovery and successfully argued that the government's attempt to install and gather data from the piezometers simply represented more fact discovery. *See id.* at 431. The Court found it significant that to the extent "experts are indeed involved in the test," the party seeking discovery is "not calling for their 'opinions held' – [*i.e.*,] their conclusions from the test results." *Id.* at 430 (quoting *Eirhart v. Libbey-Owens-Ford Co.*, 93 F.R.D. 370, 371-72 (N.D. Ill. 1981) (permitting observation of a special production line test)). Thus, the test results and raw data generated from the water sampling were not shielded from discovery by the work product doctrine or by expert opinion, but instead were found to "manifestly constitute[] fact discovery." *Id.* at 431.

A similar result should obtain here. For example, the raw data and test results from soil samples from both the plaintiffs' properties and NEGasCo's Charles Street facility are "manifestly fact discovery" and are discoverable now. *See Arkansas Fish & Game*, 74 Fed. Cl. at 431; *Southern Scrap*, 2003 WL 21474516, at *17; and *In re E.I. Du Pont De Nemours & Co. Benlate Litig.*, 918 F. Supp. at 1548.

Moreover, even if the test results, raw data, field notes, photographs, and soil boring logs constitute protectable work product – a decision NEGasCo contends would be contrary to the weight of authority – NEGasCo is nevertheless entitled to discovery of the information under the applicable standards. The work product doctrine protects the integrity of the adversarial process "by safeguarding the fruits of an attorney's trial preparations from discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). The party seeking protection under the doctrine bears the burden of proving the documents were prepared in anticipation of litigation. *See Ogden Corp.*, 202 F.3d at 460. Work product protection,

however, does not shield the underlying facts relevant to the litigation. *See Upjohn*, 499 U.S. at 395-96.

Here, even if plaintiffs argue that the work product doctrine applies – which it does not – the Court should permit NEGasCo access to any test results, data and related documents conveying facts generated by the plaintiffs or their consultants. This Court's decision in *Horan v. Sun Company, Inc.* provides guidance. In *Horan*, a discovery dispute ignited regarding environmental testing for any oil, gas, petroleum-based or chemical substances found at defendant's leased service station property. *See Horan*, 152 F.R.D. at 438. Plaintiffs resisted discovery of any environmental testing they had done under the work product doctrine. *See id.* The Court rejected plaintiffs' efforts to oppose discovery and found that the "environmental test results contain relevant, non-privileged facts." *Id.* at 439. The Court then went on to look at the work product issue. Because defendant was not seeking expert opinion or analysis, defendant was required to show only "adequate reasons" why the information concerning the test results should be produced. *See id.* Defendant easily met this burden. *See id.* In *Horan*, NEGasCo contends that the Court appears to take a "belts and suspenders" approach to its decision to order the information disclosed. First and foremost, it found that the environmental results contain relevant, non-privileged facts. *See id.* Second, while the Court ultimately cites an "adequate reasons" test, it need not have ever reached the issue of work product, as it found that the test results were non-privileged facts. The same should hold true here.

**B. The Test Results and Raw Data and Associated Documents Should Be Produced Immediately.**

This Court should not allow plaintiffs to delay production of potentially relevant *facts* merely by invoking expert reports and work product. *See* Fed. R. Civ. P. 26(a)(2)(B) and (b)(4). Prolonging production will leave NEGasCo with insufficient time to evaluate and analyze the

highly technical and complex information, particularly in light of the impending trial in this matter. Plaintiffs should not be permitted to engage in discovery gamesmanship. For example, in the most recent meet and confer regarding test results and data on plaintiffs' properties, plaintiffs' counsel essentially conceded that such data is discoverable. However, plaintiffs' counsel would not agree as to when such production was required. When asked by NEGasCo's counsel whether plaintiffs intended to produce the data that substantiated their in-court claim that plaintiffs' properties contained, among other things, clinker, coal dust, PAHs and coal tar, plaintiffs' Attorney Mark Roberts responded: "Our experts are in the process of producing documents related to their investigation. *All* of these documents will be produced with the expert report." Exhibit 3 (emphasis added).

Thus, the issue is not *whether* the documents will be produced, but *when*. And as to timing, Rule 34 requires that plaintiffs make a timely and complete production of all relevant, non-privileged material. *See* Fed. R. Civ. P. 26 & 34; *Vigilant Ins. v. East Greenwich Oil Co.*, 234 F.R.D. 20, 23 (D.R.I. 2006) (Smith, J.). Plaintiffs' production is already six weeks overdue. Plaintiffs should not be allowed to wait until the expert report is generated – or until the end of fact discovery – to produce otherwise discoverable facts relevant to the litigation. This is an abuse of discovery and prejudicial to NEGasCo, which would only have thirty days from the production of plaintiffs' expert report to evaluate the data. *See id.*

This Court should compel plaintiffs to comply with discovery rules and produce immediately all test results, raw data, and any other facts contained in "documents" such as logs, notes, photographs or video from both plaintiffs' properties and from the soil samples taken from NEGasCo's Charles Street facility. As the Supreme Court of the United States has recognized, "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper

litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). It is simply not plaintiffs' prerogative to pick and choose when it produces responsive factual material, particularly where, as here, plaintiffs' responses are already late by more than six weeks. This Court should not permit such discovery tactics.

Therefore, this Court should grant NEGasCo's Emergency Motion to Compel and order that the documents requested be produced immediately.

## CONCLUSION

Based on the foregoing, NEGasCo respectfully requests that the Court grant the Emergency Motion to Compel.

NEW ENGLAND GAS COMPANY

*/s/ Robin L. Main*

Gerald J. Petros (#2931)
Robin L. Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel. (401) 274-2000
Fax (401) 277-9600
rmain@haslaw.com

David A. Wollin (#4950)
John A. Tarantino
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

Eric D. Herschmann
David E. Ross
Seth Davis
Noelle M. Kowalczyk
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

Dated: January 24, 2008

**DEFENDANT NEW ENGLAND GAS COMPANY'S CERTIFICATION FOR THE EMERGENCY MOTION TO COMPEL PLAINTIFFS TO PRODUCE SCIENTIFIC DATA, TEST RESULTS AND RELATED DOCUMENTS AND REQUEST FOR EXPEDITED HEARING**

Defendant New England Gas Company ("NEGasCo") hereby certifies pursuant to Federal Rules of Civil Procedure 26(c) and 37(a) that the NEGasCo's counsel has in good faith conferred with plaintiffs' counsel in an attempt to resolve this dispute regarding plaintiffs' production of the requested documents. Due to the important nature of this request and the impending discovery schedule, the NEGasCo further respectfully request an expedited hearing to resolve the remaining issues in this motion.

NEW ENGLAND GAS COMPANY

*/s/Robin L. Main*
Gerald J. Petros (#2931)
Robin L. Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel. (401) 274-2000
Fax (401) 277-9600
gpetros@haslaw.com

David A. Wollin (#4950)
John A. Tarantino
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
(401) 274-7200
Fax: (401) 351-4607

Eric D. Herschmann
David E. Ross
Seth Davis
Noelle M. Kowalczyk
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

## CERTIFICATE OF SERVICE

To:
Notification via CMECF:

Gregory L. Benik - gbenik@jreri.com

David A. Cetola - dcetola@mcrobertslaw.com

Brian R. Cunha – brian@briancunha.com

Christina C. Dodds - CDodds@bishoplondon.com

Susan B. Forcier - susan.wilson@dem.ri.gov

Eric D. Herschmann - eherschmann@kasowitz.com

Robin-Lee Main - rmain@haslaw.com, sjfoster@haslaw.com

John J. McConnell, Jr. - jmcconnell@motleyrice.com

Robert J. McConnell - bmcconnell@motleyrice.com

Michael D Mitchell - mmitchell@admin.ri.gov

Charles K. Mone – cmone@campbell-trial-lawyers.com

Jonathan D Orent - jorent@motleyrice.com

Gerald J. Petros - gpetros@haslaw.com, clomas@haslaw.com

Russell X Pollack – rpollack@campbell-trial-lawyers.com

Paul Revere, III – revereiii@aol.com

Mark W. Roberts - mroberts@mcrobertslaw.com

David E. Ross - dross@kasowitz.com

Paul M. Sanford - psanford@burnslev.com, scook@burnslev.com

Anthony J. Sbarra, Jr. - asbarra@campbell-trial-lawyers.com

Gregory S. Schultz - gregory.schultz@dem.ri.gov

Kristen W. Sherman - ksherman@apslaw.com, afontaine@apslaw.com, btallman@apslaw.com

Aileen L. Sprague - asprague@motleyrice.com

Heather Spurlock Kennealy - hskennealy@mcrobertslaw.com

John A. Tarantino - jtarantino@apslaw.com, dhumm@apslaw.com

Bruce Gregory Tucker - btucker@legalmgt.com

Brian A. Wagner - brian.wagner@dem.ri.gov

Lewis S. Wiener - lewis.wiener@sablaw.com

David A. Wollin - dwollin@apslaw.com, dciuffetelli@apslaw.com, epickett@apslaw.com

Notification via first class mail:

Michael D. Mitchell, Esq.
Deputy Chief of Legal Services
R.I. Department of Administration
Division of Legal Services
One Capitol Hill
Providence, RI 02903

Susan B. Wilson
RI Department of Environmental Management
235 Promenade Street, 4th Floor
Providence, RI 02908

Neil T. Leifer
Thornton & Naumes LLP
100 Summer Street
Boston, MA 02110

Lewis S. Wiener
Sutherland, Asbill & Brennan LLP
1375 Pennsylvania Avenue, NW
Washington, DC 20004-2415

Robert J. McConnell
Motley Rice LLC
321 South Main Street, 2nd Floor
Providence, RI 02903

Christina C. Dodds
Bishop London Brophy Dodds, P.C.
3701 Bee Cave Road
Austin, TX 78746

Seth Davis
Eric D. Herschmann
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019

I hereby certify that on January 24, 2008, a copy of the foregoing New England Gas Co.'s Emergency Motion to Compel Plaintiffs to Produce Scientific Data, Test Results and Related Documents and Request for an Expedited Hearing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing.

/s/ Robin L. Main
Robin L. Main