UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GAIL CORVELLO, ET AL., | ) | |
| Plaintiffs, | ) | |
| - against - | ) | |
| NEW ENGLAND GAS COMPANY, INC., | ) | C.A. 05-0221T |
| | ) | (Related Cases: 05-274T; |
| Defendant and Third-Party Plaintiff, | ) | 05-370T; 05-522T) |
| - against - | ) | |
| BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC, ET AL., | ) | |
| Third-Party Defendants | ) | |

**PLAINTIFFS' PRETRIAL MEMORANDUM**

INTRODUCTION:

This is a tort claim brought on behalf of more than 100 property owners and residents from Tiverton, Rhode Island. As set forth in the Complaints[1] against defendant Southern Union d/b/a New England Gas Company ("NEGCo"), Plaintiffs allege that their properties have been damaged as a result of NEGCo's wrongful disposal of manufactured gas plant ("MGP") (a/k/a coal gasification plant) waste which ended up in their neighborhood. The Court has bifurcated the trial of the Plaintiffs' claims. The first phase of trial will decide issues of liability, and the second phase will be limited to the computation of damages. In the first phase of trial, Plaintiffs will seek to establish

[1] This Pretrial Memorandum is submitted on behalf of all Plaintiffs in these four consolidated actions.

NEGCo's liability under three legal theories: negligence, strict liability and public nuisance.

If the jury finds NEGCo liable on any of these theories, then Plaintiffs will offer evidence in the second phase of trial of damages they have sustained. There are three types of compensatory damages alleged: permanent diminution of property value, interference with the use and enjoyment of the property, and emotional distress arising from the damage to Plaintiffs' property interests. The Plaintiffs also seek equitable/injunctive relief, to wit, abatement of the alleged nuisance through complete remediation of all contaminated soils in the Bay Street neighborhood, as well as punitive damages.

A.. FACTS:

Plaintiffs expect to offer witnesses and documents at trial that will demonstrate that in August of 2002, workers in the Bay Street neighborhood of Tiverton, Rhode Island were excavating soil as part of a sewer connection project when they came upon soil with a blue tint. These witnesses and documents will show that, because this blue soil was characteristic of toxic MGP waste, the State of Rhode Island notified defendant NEGCo, which had owned a former coal gasification plant a mile up the street in Fall River, Massachusetts ("the Gas Works").

The evidence will show that the Defendant's facility in Fall River was involved in the manufacture of gas and that the gas manufacturing process inevitably resulted in production of toxic waste. The evidence will show that this toxic waste from Defendant's Fall River MGP included spent oxides with a blue color, as well as coal ash and coal clinkers. Plaintiffs will also offer evidence that this toxic spent oxide and coal

ash waste contained hazardous amounts of cyanide, arsenic and polycyclic aromatic hydrocarbons (PAHs).

The evidence will show that the Town of Tiverton and NEGCo conducted further investigation in the Bay Street neighborhood which consisted of soil borings, test pits and soil analysis. The parties disagree as to findings and implications of the investigations undertaken by these consultants. Plaintiffs will offer evidence that the materials unearthed in these investigations are characteristic of MGP waste and that it is more likely than not that the waste originated at NEGCo's coal gasification plant in Fall River. A property by property map of the neighborhood depicting the type of MGP waste found on individual properties is attached hereto as Attachment "A." This evidence will be corroborated by transit documents and by percipient fact witnesses who either observed the transfer of MGP waste from the Gas Works to the neighborhood or more recently have observed physical evidence of MGP waste in their neighborhood. Defendant NEGCo disputes all of these facts.

Plaintiffs will also offer evidence that when NEGCo arranged for the disposal of MGP waste from the Gas Works to the Tiverton neighborhood in the 1930s and 1940s, it knew or should have known that its MGP waste contained toxic chemicals, but despite that knowledge failed to take reasonable measures to ensure that the waste was properly handled and did not cause damage to the properties in the Bay Street neighborhood. Plaintiffs will also offer evidence that NEGCo knew or should have known that MGP waste was commonly used as fill, including MGP waste from their Fall River facility that was used as fill in another area of Tiverton. Defendant NEGCo disputes all of these facts.

Plaintiffs will offer evidence that because of the discovery of these materials in the Bay Street neighborhood, and the opportunity of exposure to them through ordinary use and improvement of the land, in September of 2003 the Town of Tiverton exercised preventive public health measures and imposed a use moratorium on the neighborhood properties. The moratorium remains in place today and will continue until the condition is remediated. The existence of the moratorium has resulted in a permanent diminution of the property values of every property within the moratorium area, whether or not that property has been found to contain MGP waste. It has also substantially limited every property owner's ability to use and enjoy their homes, whether or not that property has been found to contain MGP waste. Plaintiffs will offer evidence that the property value diminution and use interference have caused them to suffer reasonable and foreseeable emotional distress. Defendant NEGCo disputes all of these facts.

B. PLAINTIFFS' CLAIMS AGAINST DEFENDANT NEGCo:

The Plaintiffs assert claims against NEGCo. sounding in:

1. Negligence;

2. Strict liability; and

3. Public nuisance.

C. DAMAGES:

The discovery and presence of MGP waste and the resulting use moratorium has resulted in a permanent diminution of property values of every property within the moratorium area, whether or not that property has been found to contain MGP waste. The discovery and presence of MGP waste and the resulting use moratorium has also substantially limited every Plaintiff's ability to use and enjoy their properties, whether or

not that property has been found to contain MGP waste. While Plaintiffs seek remediation of their properties as a remedy in this case, which will then justify the lifting of the moratorium, at this time the moratorium remains in place and no properties containing MGP waste have been remediated. Additionally no matter the final outcome of the Plaintiffs' prayer for abatement/remediation, the evidence will demonstrate that permanent stigma associated with the presence of MGP waste in the neighborhood has caused an irreparable diminution in property values. Given this status, Plaintiffs will offer evidence that the collective diminution of their property values is approximately $15,000,000.00.

Moreover, this property value diminution and use interference has caused these home owners to suffer reasonable and foreseeable loss of use and enjoyment of their properties and emotional distress. Plaintiffs seek reasonable damages for their loss of use and enjoyment of their homes and emotional distress.

Plaintiffs also seek punitive damages from NEGCo.

D. <u>FACTUAL AND LEGAL ISSUES FOR ADJUDICATION</u>:

The factual and legal issues that must be resolved in order to fairly adjudicate this case are as follows:

**<u>Phase I</u>:**

1. Whether NEGCo's MGP waste is present in the Bay Street neighborhood;
2. Whether NEGCo committed some act or omission so that it is liable for the presence of MGP waste in the Bay Street neighborhood;
3. Whether NEGCo is strictly liable for damages caused due to the fact that its disposal of waste was an abnormally dangerous activity;

4. Whether the disposal of NEGCO's waste in the Bay Street Area of Tiverton created a public nuisance causing the Plaintiffs to suffer a special harm for which NEGCo is liable;

5. Whether the use moratorium imposed by the Town of Tiverton in September 2003 following the discovery of the MGP waste was a reasonable preventive public health measure;

6. Whether the use moratorium was a foreseeable consequence of any act or omission by NEGCo resulting in the wrongful presence of MGP waste in the Bay Street neighborhood;

7. Whether the existence of the use moratorium and the existence of MGP waste in the Bay Street neighborhood has (1) substantially contributed to the diminution of property value of the plaintiffs' individual properties, (2) substantially interfered with plaintiffs' reasonable use and enjoyment of their properties, and (3) caused them to suffer emotional distress.

**Phase II :**

8. Whether and to what extent the presence of MGP waste on a particular plaintiff's property results in damages additional to the damages caused by the use moratorium; and

9. Whether NEGCo's acts or omissions rise to the degree of culpability necessary to support an award of punitive damages.

E. ARGUMENTS IN SUPPORT OF PLAINTIFFS' CLAIMS:

The Plaintiffs' claims for negligence, strict liability and public nuisance are recognized under Rhode Island law and all of these claims survived motions to dismiss filed by NEGCo before this Court.

1. Negligence:

In its November 3, 2006, Memorandum and Order denying NEGCo's motions to dismiss these claims, this Court, citing *O'Donnell* v. *White*, 50 A. 333 (R.I. 1901), recognized NEGCo's duty in a negligence claim "to refrain from conduct that contaminates or otherwise harms neighboring properties." *Corvello v. New England Gas Co., Inc.*, 460 F.Supp.2d 314, 320-21 (D.R.I. 2006). At trial, the plaintiffs will offer evidence that NEGCo breached this duty, and that proffer will include evidence that the state of the art at the time of these activities was such that operators of coal gasification plants, such as the one at Fall River, knew that byproducts from their processes contained toxic chemicals and that disposal of the byproducts in places that made them accessible to the public created an unreasonable risk of harm.

2. Strict Liability:

Plaintiffs will demonstrate that NEGCo's arrangement to have a family operated company in Tiverton collect, haul and dispose of materials it knew to contain toxic waste constituted an ultra-hazardous or abnormally dangerous activity as a matter of law. As the District Court held in its Memorandum and Order, Rhode Island follows the Restatement (Second) of Torts §520 (1977) which provides that such activities warrant the imposition of strict liability.

*Corvello v. New England Gas Co., Inc.*, 460 F.Supp.2d at 321-22, *citing Splendorio* v. *Bilray Demolition Co., Inc.*, 682 A.2d 461 (R.I. 1996).

3. Public Nuisance:

Similarly, the District Court found that private plaintiffs, such as the residents of this neighborhood, may maintain an action for public nuisance. *Corvello v. New England Gas Co., Inc.*, 460 F.Supp.2d at 324-25, *citing Hydro Manufacturing Inc.* v. *Kayser-Roth Corp.* 640 A.2d 950 (R.I. 1994). The public nuisance doctrine applies in situations where a company creates an environmental threat to the health and safety of Rhode Islanders. *Wood v. Picillo*, 443 A.2d 1244 (R.I. 1982) The Plaintiffs will offer evidence establishing that NEGCo unreasonably interfered with a "right common to the general public" and that the plaintiff sustained "special damages" as a result of the interference. *Hydro-Manufacturing*, 640 A.2d at 957-58. Individuals or entities that either created or contributed to the creation of a public nuisance may be liable for that nuisance without regard to the issue of control. *Friends of Sakonnet v. Dutra*, 738 F. Supp. 623 (D.R.I. 1990). NEGCo's participation in the creation of a public nuisance renders it liable for the resulting damages. *Payne & Butler v. Providence Gas Company*, 31 R.I. 295, 358, 77 A. 145, 170 (R.I. 1910); *Wood v. Picillo*, 443 A.2d at 1248.

4. Additional Support for Negligence, Strict Liability and Public nuisance:

a. Non-delegable Duty:

The Plaintiffs' claims for negligence, strict liability and public nuisance are further supported by law establishing that "[l]iability also may be predicated

on the conduct of servants, agents or independent contractors." *Corvello v. New England Gas Co., Inc.*, 460 F.Supp.2d at 323 (D.R.I. 2006) *citing Restatement (Second) of Torts § 824*. cmt. c. There is no third party defense for contracting with a hauler to remove MGP waste as both Rhode Island and Massachusetts law (the Charles St. facility was located in Massachusetts) treat these activities as creating a non-delegable duty by NEGCo. *See e.g. Ballet Fabrics, Inc. v. Four Dee Realty Co. Inc.*, 314 A.2d 1 (R.I. 1974); *East Coast Collision & Restoration, Inc. v. Allyn*, 742 A.2d 273 (R.I. 1999); *Whalen v. Shivek*, 93 N.E.2d 393 (Mass. 1950).

b. Proximate Cause:

A plaintiff is entitled to recover those damages that could reasonably have been foreseen as a natural and probable result of the original act of the negligence (or other liability based conduct) of the defendant. A defendant's liability for damages includes those damages caused by an intervening act, provided the act was a reasonably foreseeable consequence of the defendant's wrongful conduct. *Roberts v. Kettelle, et al.*, 356 A.2d 207, 215 (R.I. 1976); *Aldcroft v. The Fidelity and Casualty Co. of N.Y.*, 259 A.2d 408, 411 (R.I. 1969).

F. PENDING MATTERS FOR CONSIDERATION PRIOR TO TRIAL:

Other than discovery motions pending before the Court, plaintiffs have no motions pending. However, plaintiffs believe that there are matters that ought to be considered by the Court prior to trial:

1. NEGCo has pending third party claims against several entities who it alleges to have caused or contributed to the contamination of the

plaintiffs' properties. Because these claims are in the nature of contribution claims, the Court has severed these third party claims for resolution in a later phase before a different jury. The contribution, if any, of waste from any of the third party defendants is not relevant to whether or not NEGCo's MGP waste is present in the Bay Street neighborhood and on plaintiffs' properties. This is because the presence of third party waste does not make the presence of MGP waste more or less likely. Accordingly, NEGCo should be precluded from offering any evidence that any chemicals found on any of plaintiffs' properties came from activities of any third party defendants.

2. All of the Plaintiffs' properties are in the State of Rhode Island and it is the Rhode Island administrative regulations pertaining to levels of contaminants in the soil that apply. NEGCO should be precluded from offering any evidence as to the environmental standards of neighboring states such as Massachusetts and Connecticut as such standards are irrelevant to the Plaintiffs' properties solely at issue in the case.

DATED: April 15, 2008

Respectfully Submitted,

/s/ Neil T. Leifer

Neil T. Leifer
David C. Strouss
Brad J. Mitchell
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110

Robert J. McConnell (#3888)
Jonathan D. Orent (#7408)
Motley Rice LLC
321 South Main Street
Providence, RI 02940

Mark W. Roberts
McRoberts, Roberts & Rainer
51 State Street
Boston, MA 02109

Stephen P. Harten (#4102)
Richard J. Zabbo (#6861)
Ratcliffe Burke Harten & Elias LLP
1600 Financial Plaza
Providence, RI 02903

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15 day of April, 2008, a copy of the foregoing was served to all counsel of record via ECF.

/s/ Neil T. Leifer

# ATTACHMENT

# A




PHYSICAL EVIDENCE OF MGP WASTE IDENTIFIED IN BORING LOGS AS COAL, SLAG, CLINKERS, BLACK, BLUE, OR GREEN SOIL STAINING, COAL DUST, BRICK, BURNT WOOD OR CHEMICAL ODORS, ETC.

LABORATORY RESULTS OF SOIL SAMPLES IDENTIFIED EXCEEDANCES OF 1 OR MORE POLYCYCLIC AROMATIC HYDROCARBONS (PAH) GREATER THAN THE APPLICABLE RHODE ISLAND DIRECT EXPOSURE CONCENTRATION

LABORATORY RESULTS OF SOIL SAMPLES IDENTIFIED CONCENTRATION OF CYANIDE (CN) GREATER THAN THE RHODE ISLAND DIRECT EXPOSURE CONCENTRATION

LABORATORY RESULTS OF SOIL SAMPLES IDENTIFIED CONCENTRATION OF CYANIDE (CN)

LABORATORY RESULTS OF SOIL SAMPLES IDENTIFIED CONCENTRATION OF ARSENIC (AS) GREATER THAN THE RHODE ISLAND DIRECT EXPOSURE CONCENTRATION

NO ASSESSMENT DATA AVAILABLE (TO WESTON & SAMPSON)

ASSESSMENT CONDUCTED, ADDITIONAL ASSESSMENT NEEDED

54 JUDSON — PLAINTIFF PROPERTY

1 — LOT DESIGNATION

3 — BLOCK DESIGNATION

PLAT 8-6 — PLAT DESIGNATION

PLAT LINE

NOTES:

1. ALL LOTS (WITH THE EXCEPTION OF 05-19) NEED ADDITIONAL ASSESSMENT TO EVALUATE THE NATURE AND EXTENT OF FILL IMPACTS REGARDLESS OF COLOR DESIGNATION ON LOT
2. FIGURE BASED ON FIGURE 2 FROM THE SITE INVESTIGATION REPORT BAY STREET SUSPECTED FILL AREA, TIVERTON, RHODE ISLAND BY VHB, INC., DATED OCTOBER 2003

ATTORNEY-CLIENT PRIVILEGED
WORK PRODUCT PROTECTED

FIGURE 5

SUMMARY OF PHYSICAL AND CHEMICAL INDICATORS OF MGP WASTE

MARCH 2008 SCALE: NOT TO SCALE

Weston&Sampson.

**Plaintiffs' Counsel**

| | |
|---|---|
| Paul Revere, III<br>Law Offices of Paul Revere, III<br>226 River View Lane<br>Centerville, MA 02632<br>(508) 778-7126<br>RevereIII@aol.com | Brian R. Cunha<br>Law Offices of Brian Cunha & Associates<br>311 Pine Street<br>Fall River, MA 02720<br>brian@briancunha.com |

Richard J. Zabbo, Esq.
Ratcliffe Burke Harten & Elias LLP
160 Financial Plaza
Providence, RI 02903
rzabbo@rbhelaw.com

**Southern Union**

| | |
|---|---|
| David A. Wollin, Esq.<br>Adler Pollock & Sheehan, P.C.<br>One Citizens Plaza, 8th Floor<br>Providence, RI 02903-1345<br>401-274-7200<br>dwollin@apslaw.com | John Tarantino, Esq.<br>Adler Pollock & Sheehan, P.C.<br>175 Federal Street, 10th Floor<br>Boston, MA 02110<br>617-482-0600<br>617-482-0604<br>jtarantino@apslaw.com |
| Kristen W. Sherman<br>Adler Pollock & Sheehan P.C.<br>One Citizens Plaza<br>8th Floor<br>Providence, RI 02903<br>274-7200<br>Fax: 351-4607<br>Email: ksherman@apslaw.com | David E. Ross, Esq.<br>Kasowitz, Benson, Torres & Friedman, LLP<br>1633 Broadway<br>New York, NY 10019<br>212-506-1700<br>212-506-1800<br>dross@kasowitz.com |
| Seth Davis<br>Kasowitz, Benson, Torres & Friedman, LLP<br>1633 Broadway<br>New York, NY 10019<br>212-506-1790<br>Fax: 212-506-1800 | Eric D. Herschmann<br>Kasowitz, Benson, Torres & Friedman, LLP<br>1633 Broadway<br>New York, NY 10019<br>212-506-1700<br>Fax: 212-506-1800<br>Email: eherschmann@kasowitz.com |

| | |
|---|---|
| Noelle Kowalczyk<br>Kasowitz, Benson, Torres & Friedman LLP<br>1633 Broadway<br>New York, NY 10019<br>212-506-1700<br>Fax: 212-506-1800 | Gerald J. Petros<br>Hinckley, Allen & Snyder<br>50 Kennedy Plaza<br>Suite 1500<br>Providence, RI 02903<br><br>Email: gpetros@haslaw.com |
| Robin-Lee Main<br>Hinckley Allen & Snyder<br>50 Kennedy Plaza<br>Suite 1500<br>Providence, RI 02903-0819<br>Email: rmain@haslaw.com | Christina C. Dodds<br>Bishop London Brophy Dodds, P.C.<br>3701 Bee Cave Road<br>Austin, TX 78746<br>Email: CDodds@bishoplondon.com |

**INTERESTED PARTIES**

**RIDEM**

| | |
|---|---|
| Lewis S. Wiener, Esq.<br>Sutherland, Asbill & Brennan LLP<br>1375 Pennsylvania Ave, NW<br>Washington, DC 20004-2415<br>Email: lewis.wiener@sablaw.com | Patty Allison Fairweather, Esq.<br>Executive Counsel<br>State of Rhode Island<br>Department of Environmental Management<br>Office of Legal Services<br>235 Promenade Street<br>Providence, RI 02908-5767<br>patty.fairweather@dem.ri.gov |
| Gerald J. Pels, Esq.<br>Sutherland, Asbill & Brennan, LLP<br>2 Houston Center<br>909 Fannin, Suite 2200<br>Houston, TX 77010<br>gerry.pels@sablaw.com | Gregory S. Schultz, Esq.<br>Legal Counsel<br>State of Rhode Island<br>Department of Environmental Management<br>Office of Legal Services<br>235 Promenade Street<br>Providence, RI 02908-5767<br>gregory.schultz@dem.ri.gov |
| Susan B. Forcier<br>R.I. Department of Environmental Mngt.<br>Office of Legal Services<br>235 Promenade Street<br>Fourth Floor<br>Providence, RI 02908<br><br>Email: susan.wilson@dem.ri.gov | Brian A. Wagner<br>RI Department of Environmental Management<br>Office of Legal Services<br>235 Promenade Street, 4th Floor<br>Providence, RI 02908 |

| | |
|---|---|
| | Email: brian.wagner@dem.ri.gov |

**RI Governor Donald L. Carcieri**

| | |
|---|---|
| Matthew B. Smith<br>Matthew B. Smith, Esq., Attorney At Law<br>1206 Westminster St.<br>Providence, RI 02909<br>Email: matthew@verdecchialaw.com | Michael D Mitchell, Esq.<br>Department of Administration<br>One Capitol Hill<br>Providence, RI 02908<br>Email: mmitchell@admin.ri.gov |

**Jose Souza, Sr.**

Michael K. Marran, Esq.
P.O. Box 6067
321 South Main Street, Suite 200
Providence, RI 02940
(401) 454-4000

**THIRD PARTY DEFENDANTS**

| | |
|---|---|
| Gulf Oil Corporation<br><br>Bruce Gregory Tucker, Esq.<br>55 Hammarlund Way<br>Middletown, RI 02842<br>Email: btucker@legalmgt.com | Gulf Oil Corporation<br><br>David B. Willis, Esq.<br>Legal Management Services, LLC<br>55 Hammarlund Way<br>Middletown, RI 02842 |
| Gulf Oil Corporation<br><br>David A. Crichlow<br>Pillsbury Winthrop Shaw Pittman, LLP<br>1540 Broadway<br>New York, New York 10036 | Gulf Oil Corporation<br><br>David M. Goldberg<br>Pillsbury Winthrop Shaw Pittman, LLP<br>1540 Broadway<br>New York, New York 10036 |
| Bridgestone Firestone North American Tire, LLC; Bridgestone Americas Holdings, Inc.:<br><br>Benjamin V. White, III Esq.<br>Kimberly A. Simpson, Esq.<br>Vetter & White Inc.<br>20 Washington Place<br>Providence, RI 02903<br>bwhite@vetterandwhite.com<br>ksimpson@vetterandwhite.com | Honeywell International, Inc<br><br>Gregory L. Benik, Esq.<br>Nixon Peabody LLP<br>One Citizens Plaza<br>Providence, RI 02903<br>Email: gbenik@nixonpeabody.com |
| | |

| | |
|---|---|
| Bridgestone Firestone North American Tire, LLC; Bridgestone Americas Holdings, Inc.:<br><br>William David Wick<br>Wactor & Wick LLP<br>180 Grand Avenue<br>Suite 950<br>Oakland, CA 94612 | |

**Inland Fuel Terminals, Inc.**

Paul M. Sanford, Esq.
Burns & Levinson LLP
One Citizens Plaza, Suite 1100
Providence, RI 02903
401-831-8330
401-831-8359 facsimile
psanford@burnslev.com

Christopher P. McCormack, Esq.
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
203-330-2016
203-576-8888
cmccormack@pullman.com

**Honeywell International, Inc.**

Gregory L. Benik, Esq.
Benik & Associates, P.C.
931 Jefferson Boulevard, Suite 2008
Warwick, RI 02886
401-454-0054
401-732-5054 facsimile
gbenik@jreri.com

Jeffrey Bromme, Esq.
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
202-942-6254
202-942-5999
jefrey_bromme@aporter.com

**Dominion Resources, Inc.**
**Dominion Energy Brayton Point LLC**

Andrew G. Mauck, Esq.
Troutman Sanders LLP
P.O. Box 1122
1001 Halifax Point
Richmond, VA 23208

Christian Bennett White Stephens, Esq.
Taylor Duane Barton & Gilman LLP
10 Dorrance Street, Suite 700
Providence, RI 02903
401-273-7171
cstephens@taylorduane.com

Matthew B. Kirsner, Esq.
Troutman Sanders LLP
P.O. Box 1122
1001 Haxal Point
Richmond, VA 23208
804-697-1449
804-698-6001 facsimile

Craig R. Waksler, Esq.
McGivney & Kluger, P.C.
72 Pine Street, 1st Floor
Providence, RI 02903
401-272-5300
401-331-7454
cwaksler@mcgivneyandkluger.com

**City of Fall River**

Kerry T. Ryan, Esq.
Tarlow Breed Hart & Rodgers, P.C.
101 Huntington Avenue
Prudential Center
Boston, MA 02199
617-218-2000 Main
617-218-2027 Direct Line
kyran@tbhr-law.com

Anthony F. Muri, Esq.
Muri Associates LLC
10 Keybosset Street
Providence, RI 02903
401-421-7300
amuri@murilaw.com

Emily C. Shanahan, Esq.
Tarlow Breed Hart & Rodgers, P.C.
101 Huntington Avenue
Prudential Center
Suite 500
Boston, MA 02199
617-218-2000
617-261-7673

Town of Tiverton

Jeanne M. Scott, Esq.
Ursillo Teitz & Ritch, Ltd.
2 Williams Street
Providence, RI 02903
401-331-2222 X205
jeannescott@utrlaw.com